COMMONWEALTH vs. FRANK P. STOKES.

Suffolk. October 4, 1977. — March 9, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Homicide. Self-Defense. Practice, Criminal,* Appeal; Exceptions: failure
to save exception; Charge to jury. *Due Process of Law,* Burden of proof.
*Evidence,* Presumptions and burden of proof. *Witness,* Privilege.

Where a murder trial was held prior to the decision of the United States
Supreme Court in *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), the
defendant's failure to request instructions concerning burden of proof
did not preclude appellate review of his constitutional claims. [587-
588]

With respect to trials occurring prior to the decision of the United States
Supreme Court in *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), a specific
objection to the judge's instructions on burden of proof need not be
shown in order to secure appellate review. [588-590]

Discussion of the standard of review to be applied to instructions on
burden of proof under the decision of the United States Supreme Court
in *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975). [590-591]

At a murder trial in which the defendant adequately raised the issue of
self-defense, the judge's instructions on burden of proof did not meet
the constitutional requirements set forth in *Mullaney* v. *Wilbur,* 421
U.S. 684 (1975). [591-592]

Where the issue of reasonable provocation is adequately raised by the
evidence at a murder trial, and where both murder and manslaughter
are being submitted to the jury as permissible verdicts, the judge must
instruct the jury that they may not return a verdict of guilty of murder
unless the Commonwealth proves the absence of the heat of passion on
sudden provocation beyond a reasonable doubt. [592]

Where the issue of self-defense is adequately raised in the evidence at a
murder trial, the judge must instruct the jury that, if there is evidence
that the defendant was privileged to use force to defend himself and, if
that evidence is believed by the jury, the burden is on the Com-
monwealth to prove beyond a reasonable doubt that the defendant
acted with excessive force. [593]

At a murder trial in which the defendant raised the issue of self-defense,
the judge's instructions that "[i]f this was a killing in self defense but
excessive force was used, [the defendant] is guilty of manslaughter"
were insufficient. [593-594]

A criminal defendant had no standing to assert error in the judge's admission of testimony by the defendant's wife without first determining that she had waived her privilege not to testify against her husband. [594-595]

INDICTMENT found and returned in the Superior Court on February 12, 1974.

The case was tried before *Roy, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Catherine Clement* for the defendant.

*Kathleen M. Curry,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.   The defendant Frank P. Stokes was indicted for the murder in the second degree of Joseph Baskerville. At trial, Stokes admitted that he had killed the victim but claimed that he had acted in self-defense. The jury found the defendant guilty of murder in the second degree and the judge imposed the statutory sentence of life imprisonment. The defendant appealed under G. L. c. 278, §§ 33A-33G, challenging the admission of photographs and the propriety of the judge's charge. The Appeals Court affirmed the judgment on June 25, 1976. *Commonwealth* v. *Stokes,* 4 Mass. App. Ct. 822 (1976). On April 27, 1977, we allowed the defendant's application for further appellate review.

The defendant argues that the trial judge's instructions on burden of proof were constitutionally inadequate under both *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), which was made retroactive in its effect by *Hankerson* v. *North Carolina,* 432 U.S. 233 (1977), and *Commonwealth* v. *Rodriguez,* 370 Mass. 684 (1976). Additionally, he argues several errors of State law, namely, that (1) the trial judge erred in allowing the defendant's wife to testify against him; that (2) the judge incorrectly instructed the jury on the distinction between murder and manslaughter; and that (3) the defendant's representation at trial was so lacking as to deprive him of the effective assistance of counsel required

by the Sixth and Fourteenth Amendments to the United States Constitution.

We agree with the defendant's claims that the judge's instructions were constitutionally inadequate under *Mullaney, Hankerson,* and *Rodriguez, supra,* as to the burden of proof on the issues of self-defense, reasonable provocation, and excessive force. Accordingly, we reverse.

In the early morning hours of December 23, 1973, Joseph Baskerville was found stabbed to death on the sidewalk of Radcliffe Street, Dorchester. Testimony from several witnesses produced the following facts.

During the evening of December 22, 1973, the defendant stopped at the Radcliffe Street home of a neighbor, Clementine Scott, to wish her a merry Christmas. He was carrying a hunting knife and a tear gas gun on his person. There was evidence that he had used the knife earlier that day to do household repairs, and that he had obtained the gun as partial payment for previous repair work he had done for a friend. Ms. Scott told the defendant that it would be a sad Christmas for her as her father had died recently. She invited him in for a visit. A short time later the victim's wife came in, followed by the victim's cousin and, soon after, by the victim, Joseph Baskerville.

There was testimony that Baskerville was between six feet and six feet two inches tall and weighed between 160 and 180 pounds. There was also testimony that Baskerville had been drinking.

About 11:30 P.M. Ms. Scott went to answer the door and spoke briefly with a family friend. During this time, the men sat at the dining room table and discussed their experiences in military service. When Ms. Scott returned to the dining room, the defendant's tear gas gun was on the table.

Baskerville, stating that Stokes should not have a gun in the house, took the gun from the table and refused to return it. After Ms. Scott requested that the weapon be returned to the defendant, Baskerville agreed that he would return it outside. Then, without provocation, Baskerville got up and

either struck the defendant or rubbed his hand or the gun against the defendant's face. The defendant winced but had no other reaction. Subsequently, both men went outside.

Mrs. Bohannon, a neighbor, testified that from her window she observed the defendant and the victim standing on Ms. Scott's porch. The defendant's arm was on the victim's shoulder. Minutes later, after hearing more conversation, she observed the men standing on a grassy area in front of the house. Soon after, Mrs. Bohannon heard a man run through her yard and heard Mrs. Baskerville scream.

Another neighbor, James Moses, also observed the defendant through his window. He testified that the defendant was standing over a man in the middle of the street. He saw the defendant try to drag the man toward the sidewalk. When Stokes discovered Moses at the window, he immediately abandoned the body and went up the street.

The defendant's wife testified that as she was returning from work about midnight she too saw her husband in the middle of Radcliffe Street. She observed him pull a knife out of another man's stomach. Soon after she entered her house, her husband came in carrying a man's coat and a knife and wearing a raincoat covered with blood. Mrs. Stokes testified to a conversation in which her husband said, "I think I killed a man. . . . I think I'll go out and hide the coat and knife — and the other man's coat."

Within a few minutes the police arrived and arrested Stokes. After being advised of his Miranda rights, the defendant made a statement admitting that he had stabbed the victim after being threatened by him.

The defendant's testimony substantially corroborated that of the other witnesses. He testified, however, that after Baskerville hit him he attempted to leave the Scott house. According to the defendant, Baskerville stopped him as he tried to leave, and then threatened to kill him. When the defendant again attempted to leave, Baskerville followed and blocked his way. The defendant stated that, when the two men were outside, Baskerville again threatened to kill him and, in fact, struck him. He testified that he asked

Baskerville several times to leave him alone, that Baskerville grabbed him and pinned him, that there was a struggle, and that he then struck the victim with his knife.

Although the defendant's trial counsel did not take exception to the judge's charge, the defendant argues on appeal[1] that the instructions were inadequate in two respects. First, the defendant contends that, since issues of provocation and self-defense were clearly raised by the evidence, under *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), and *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976), he is entitled to an instruction which places on the Commonwealth the burden of disproving those factors beyond a reasonable doubt. Second, the defendant argues that the judge erred in failing to instruct the jury adequately that the element of self-defense may mitigate the crime of murder to manslaughter, even though excessive force was used.

1. *Propriety of Review.*

Preliminarily we must determine whether our review of the judge's charge is appropriate where defense counsel neither requested instructions concerning burden of proof nor objected to the charge as given. We conclude that, in the circumstances of this case, neither of trial counsel's omissions is fatal to the defendant's constitutional claims.

As to the defendant's failure to request instructions on burden of proof, we held in *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976), that, where the issue of self-defense has been fairly raised by the evidence, a trial judge is required to charge that the Commonwealth bears the burden of disproving self-defense "when a timely request is made in any trial or retrial after the date of this decision" (footnote omitted). *Id.* at 692. We expressly declined at that time "to comment on other circumstances which might require a judge to give such a charge even in the absence of such a request." *Id.* at 692 n.9.

---

[1] We observe that appellate counsel who appeared before us was not trial counsel in this case.

Here, sufficient evidence was presented to raise the issue of self-defense.[2] Because the trial occurred in 1974, neither trial counsel nor the judge had the benefit of the Supreme Court's holding in *Mullaney* v. *Wilbur, supra,* or of our rulings in *Commonwealth* v. *Rodriguez, supra* (Commonwealth has burden of disproving self-defense), *Commonwealth* v. *Johnson,* 372 Mass. 185, 192 (1977), or *Commonwealth* v. *Greene,* 372 Mass. 517, 518-519 (1977) (Commonwealth has burden of disproving "provocation"). Additionally, subsequent to the Appeals Court's consideration of this case, the Supreme Court in *Hankerson* v. *North Carolina* gave *Mullaney* v. *Wilbur* "complete retroactive effect." 432 U.S. 233, 241, 243 (1977). In light of these circumstances we conclude that it is appropriate to review the constitutional sufficiency of the judge's charge notwithstanding the fact that the defendant's trial counsel failed to request an instruction on burden of proof. Indeed, to hold otherwise would be tantamount to requiring clairvoyance on the part of defense counsel in requests for instructions filed prior to *Mullaney.* We insist on no such standard. Cf. *Commonwealth* v. *Cook,* 371 Mass. 832, 833-834 (1977).

Similar principles govern our conclusions concerning trial counsel's failure to object and take exception to the judge's charge. We are aware of the suggestion in *Hankerson* that, with respect to pre-*Mullaney* cases, "[t]he States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error." 432 U.S. at 244 n.8. For two reasons, we decline to apply Massachusetts law in this manner.

---

[2] On this issue there was evidence that the victim was larger and heavier than the defendant, that he was intoxicated, and that when he precipitated the encounter with the defendant he was armed with a weapon which could have been used as a club. With respect to the encounter outside the Scott home, the defendant testified to a fight in which he was in fear for his life. The associate medical examiner for Suffolk County testified that one wound could have been made when the victim had his arm raised over the defendant.

First, it is true that under Massachusetts law "an assignment of error . . . not based on an exception brings nothing to this court for review . . .." *Commonwealth* v. *Franks,* 365 Mass. 74, 76 (1974). See *Commonwealth* v. *Ambers,* 370 Mass. 835, 838 (1976); *Commonwealth* v. *Leavy,* 369 Mass. 963 (1976); *Commonwealth* v. *Underwood,* 358 Mass. 506, 509 (1970); *Commonwealth* v. *Foley,* 358 Mass. 233, 236 (1970); *Commonwealth* v. *Myers,* 356 Mass. 343, 346-347 (1969). In appropriate instances, however, this court "has and will exercise the power to set aside a verdict . . . when a decisive matter has not been raised at the trial." *Commonwealth* v. *Myers, supra* at 347, quoting from *Commonwealth* v. *Conroy,* 333 Mass. 751, 757 (1956). See *Commonwealth* v. *Taylor,* 319 Mass. 631, 633 (1946); *Commonwealth* v. *MacGregor,* 319 Mass. 462, 463 (1946); *Commonwealth* v. *McDonald,* 264 Mass. 324, 336 (1928); *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 25 (1923).

In the instant case, the substantial nature of the rights involved is unquestionable. In both *Mullaney* and *Hankerson* the Court emphatically recognized that the constitutional issue of burden of proof goes to the very heart of the truth-finding function of the criminal trial and, as such, raises "serious questions about the accuracy of guilty verdicts." *Hankerson* v. *North Carolina, supra* at 241, quoting from *Ivan V.* v. *City of New York,* 407 U.S. 203, 204 (1972). See *Mullaney* v. *Wilbur,* 421 U.S. 684, 699-700 (1975); *In re Winship,* 397 U.S. 358, 364 (1970). We conclude, therefore, that under Massachusetts law appellate review is warranted. See generally *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967). See also *Commonwealth* v. *Leavy,* 369 Mass. 963 (1976); *Commonwealth* v. *Franks,* 365 Mass. 74, 76 (1974); *Commonwealth* v. *Foley,* 358 Mass. 233, 236 (1970).

Second, were we to preclude review of the burden of proof issue on the ground that no objection or exception was taken to that aspect of the judge's charge, we would, in our view, fall short in our duty to apply *Mullaney* retroactively. It would be inconsistent to hold on the one hand that a

substantive rule of constitutional dimension is completely retroactive and to insist, on the other hand, that defense counsel must have anticipated the rule in the form of an objection or exception before it may be applied retroactively. Therefore, we conclude that, with respect to trials occurring before *Mullaney,* a specific objection to the judge's instructions on burden of proof need not be shown in order to secure appellate review.

2. *Burden of Proof: Standard of Review.*

We strictly adhere to the principle that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). See *Commonwealth* v. *Rodriguez,* 370 Mass. 684, 687-688 (1976); *Commonwealth* v. *Kostka,* 370 Mass. 516, 531-532 (1976). In *Mullaney* v. *Wilbur* the Supreme Court made unmistakably clear that this principle applies not only to facts which, if not proved, would wholly exonerate the defendant, but also to those facts which mitigate the degree of criminal culpability. 421 U.S. at 697-698.

In adopting the ruling of *Mullaney,* however, we are not required to apply a narrow and precise test to the instructions given by the judge.[3] If *Mullaney* imposed such a requirement, reversal would follow with mathematical certainty in all cases where self-defense or reasonable provocation had been raised in the evidence sufficiently and where the burden of proof as to these precise issues had not been placed by specific language on the Commonwealth.

Rather, we believe that, in any case where the requirements of *Mullaney* are placed in issue, the charge to the jury

---

[3] Indeed, in both *Mullaney* and *Hankerson,* the Supreme Court dealt not with a type of charge which might be expected under the law of this Commonwealth, but with instructions given in accordance with State statutes which, by establishing presumptions of malice, affirmatively shifted the burden of proof to the defendants. See *Hankerson* v. *North Carolina,* 432 U.S. 233, 236-237 (1977); *Mullaney* v. *Wilbur,* 421 U.S. 684, 691-692 (1975).

must be examined in its entirety to determine whether the constitutional requirements have been met. This accords with well established practice as to testing the sufficiency of jury instructions. See *Commonwealth* v. *Leaster*, 362 Mass. 407, 416-417 (1972); *Commonwealth* v. *Kelley*, 359 Mass. 77, 92 (1971). Cf. *Commonwealth* v. *Johnson*, 372 Mass. 185 (1977). For example, a jury charge might well be constitutionally sufficient which clearly placed the burden of proving malice beyond a reasonable doubt on the Commonwealth and contained other discussion which, although not referring to the burden of proof as to self-defense and reasonable provocation, adequately defined those factors and established them as negating a finding of malice.

We add that this court will bring greater expectations, and consequently more careful scrutiny of the judge's charge as to these issues, in any case where the trial occurred after the date of *Mullaney,* and particularly after the date of *Rodriguez.*[4]

3. *Burden of Proof: The Charge as to Self-defense.*

Examining the charge to the jury in its entirety, we conclude that the instructions on burden of proof in this case did not comport with the constitutional requirements set forth in *Mullaney* and its progeny. The judge in this case treated the issue of burden of proof only in general terms, cf. *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 689 (1976), and then only briefly, almost cryptically. At no time did he discuss the burden of proof as to malice, self-defense or reasonable provocation.

The defendant argues, and we agree, that these instructions at best left the jury with an imprecise notion of the facts which the Commonwealth was required to prove in order to make out its case against the defendant. Additionally, the judge's remarks concerning the evidence mitigating or negating the crime of murder may well have

---

[4] This consideration is a matter of Massachusetts practice. It in no way minimizes our retroactive application of the *Mullaney* requirements themselves.

suggested that the defendant bore the burden of proving that he had acted on adequate provocation or in legitimate self-defense.[5]

4. *Burden of Proof: The Charge as to Reasonable Provocation and Excessive Force.*

We do not discount the possibility that, at any retrial of the case, the same evidence (as well as other evidence) which tended to show a privilege in the defendant of self-defense might well relate to the issue whether the defendant acted with reasonable provocation, or in a "'sudden transport of passion or heat of blood.'" *Commonwealth* v. *Greene*, 372 Mass. 517, 522 (1977). These questions are relevant to the issue whether the homicide might be manslaughter rather than murder.

It is clear to us that *Mullaney* and *Hankerson* require, as to burden of proof on the reasonable provocation issue, the same instruction, in substance, as is required on the self-defense issue. *Commonwealth* v. *Greene, supra* at 521-522. *Commonwealth* v. *Johnson*, 372 Mass. 185, 193 (1977). Thus, where such mitigating circumstances are adequately raised in the evidence, and where both murder and manslaughter are being submitted to the jury as permissible verdicts, the judge must now instruct the jury that they may not return a verdict of guilty of murder unless the Commonwealth proves the absence of the heat of passion on sudden provocation beyond a reasonable doubt.[6]

---

[5] After the judge reviewed for the jury the evidence tending to mitigate a finding of malice, he asked whether this evidence was "enough to justify a provocation," or whether it was "adequate enough to [justify the] use [of] a deadly weapon . . . some moments later."

[6] Aside from the question of burden of proof discussed *supra*, the judge's charge with respect to heat of passion was entirely correct. Despite the defendant's arguments to the contrary, it is clear that if sufficient time had elapsed between the provocation and the killing for passions to have cooled then the crime was murder and not manslaughter. See *Commonwealth* v. *Coleman*, 366 Mass. 705, 715 (1975). Neither *Commonwealth* v. *Edmonds*, 365 Mass. 496 (1974), nor *Commonwealth* v. *Kendrick*, 351 Mass. 203 (1966), both self-defense cases, suggests anything to the contrary.

Similar instructions are now required on the issue of "excessive force." It seems probable that, at any retrial of this case, the judge will be required to instruct the jury on that question (see part 5 of this opinion) as it relates to the manslaughter issue. Thus, he must instruct that, if there is evidence that the defendant was privileged to use force to defend himself and, if that evidence is believed by the jury, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant acted with excessive force.

5. *The Judge's Charge with Respect to Manslaughter.*

We turn now to the defendant's argument as to the asserted errors of State law in the charge on manslaughter. We observe that in this area, also, defense counsel failed to object or except to the charge. Since we have already concluded that the defendant must have a new trial, we need not determine the preliminary question whether, in the absence of exceptions and in the absence of reversible error, we would review this alleged error in the charge. We do not intimate at this time that what we have said, *supra,* as to the judge's duty to charge on the "burden of proof," even in the absence of objections or exceptions, has relevance here. We consider this portion of the judge's charge as it concerns issues which probably will arise at any retrial of the case.

On the distinction between murder and manslaughter, the judge instructed the jury that "there are three alternative verdicts which . . . [may be returned] on this indictment: First: Not guilty. Secondly: Guilty as charged. . . . And, third: Guilty of manslaughter." As to the issue of manslaughter, the judge thoroughly instructed the jury as to one circumstance which may reduce a killing from murder to manslaughter, namely, the circumstance where the killing is committed in the heat of passion, caused by adequate provocation. As to the other mitigating circumstance, the judge simply stated at the end of the charge, "If this was a killing in self defense but excessive force was used, he is guilty of manslaughter."

In *Commonwealth* v. *Kendrick*, 351 Mass. 203 (1966), a case in which a killing resulted from a fight between the victim armed with a poker and the defendant armed with a knife, we reversed a judgment on the basis that the instructions to the jury omitted any mention of the legal consequences of the use of excessive force. *Id.* at 211. We concluded that "[t]he jury . . . should have been instructed further, upon the assumption that the deceased was the original assailant, that if the use of the knife by the defendant as a means of averting harm to himself was unreasonable and clearly excessive in light of the existing circumstances, they could conclude that the defendant himself became the attacker and, since death resulted from his use of excessive force, he would be guilty of manslaughter." *Id.*

The judge in the instant case did place the issue of the use of excessive force before the jury, yet explained it insufficiently. For the purposes of retrial in this case, we note with approval the language in *Commonwealth* v. *Kendrick* which discusses more fully the jury's task in determining whether a finding of excessive force is warranted beyond a reasonable doubt.[7]

6. *Evidentiary Issues.*

We address the issues raised by the defendant concerning the admissibility of his wife's testimony, because such questions are likely to arise at a new trial. First, the defendant contends that certain statements made to his wife after the incident ("I think I killed a man. . . . I think I'll go out and hide the coat and knife — and the other man's coat.") were made in the context of a private conversation. Therefore,

---

[7] As we made clear in *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966), the question of how far a party may properly go in self-defense is a question for the jury, "not to be judged of very nicely, but with due regard to the infirmity of human impulses and passions," quoting from *Monize* v. *Begaso*, 190 Mass. 87, 89 (1906). In passing on the reasonableness of the force used by the defendant, "the jury should consider evidence of the relative physical capabilities of the combatants, the characteristics of the weapons used, and the availability of maneuver room . . . or means of escape . . .." *Id.* at 212.

the defendant argues, his spouse is disqualified absolutely from giving such testimony under G. L. c. 233, § 20.

Because there is evidence indicating that the defendant's two daughters were present when the statements were made, there is a question whether the conversation was in fact private. On a proper objection, the defendant was, and will in a new trial be, entitled to a ruling on that question prior to the admission of the conversation.[8] It is for the trial judge to determine whether the conversation was overheard by the children, and whether the children were "of sufficient intelligence at the time to pay attention, and to understand what was being said." *Freeman* v. *Freeman*, 238 Mass. 150, 161 (1921).

Assuming arguendo that the conversation was not private, the defendant next asserts that it was error for the judge to allow Mrs. Stokes to testify without first determining that she had waived her privilege not to testify against her husband. G. L. c. 233, § 20. The defendant correctly points out that a spouse may testify against the other only if willing to do so. *Commonwealth v. Saltzman*, 258 Mass. 109, 110 (1927). The privilege is one that he or she alone can claim, and one which can be waived over the objection of the other spouse. *Id.* W.B. Leach & P.J. Liacos, Massachusetts Evidence 138 (4th ed. 1967). It follows, then, that the defendant has no standing to assert error in the trial judge's admission of privileged testimony.[9]

> *Judgment of the Superior Court reversed.*
>
> *Verdict set aside.*

---

[8] If no objection is made when the evidence is offered, testimony as to the conversation is received at its full probative value. *MacDonald's Case*, 277 Mass. 418 (1931). W.B. Leach & P.J. Liacos, Massachusetts Evidence 139 (4th ed. 1967).

[9] We note, however, that as a matter of good trial practice the judge should satisfy himself, outside the presence of the jury, that the spouse who is about to testify against the other in a criminal proceeding knowingly waives his or her statutory privilege.