COMMONWEALTH vs. MICHAEL McCREARY.

Hampden.    September 18, 1981. — December 3, 1981.

Present: GREANEY, PERRETTA, & SMITH, JJ.

*Evidence*, Of threat, Conversation between husband and wife, Judicial
    discretion. *Constitutional Law*, Confrontation of witnesses.

At the trial of charges arising from an incident in which the defendant
    beat and kicked the victim and threatened him with a knife, there was
    no error in the exclusion of certain testimony on cross-examination of
    the victim's wife with respect to threats made by the victim against the
    defendant where certain of the questions asked by defense counsel
    were improper in form, where an answer by the witness was unre-
    sponsive, and where some of the testimony sought to be elicited was of
    private conservations between husband and wife. [691-695]
At a criminal trial exclusion of certain testimony because of the disquali-
    fication applicable to private conversations between husband and wife
    did not deny the defendant his constitutional right of confrontation
    and his right to meaningful cross-examination where the testimony
    was of marginal relevance, where the jury received similar informa-
    tion through other testimony, and where defense counsel failed to
    specify appropriate grounds for avoiding the disqualification.
    [695-697]

INDICTMENTS found and returned in the Superior Court
Department on June 10, 1980.

The cases were tried before *Cross*, J.

*Margaret H. Van Deusen* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for
the Commonwealth.

GREANEY, J.  McCreary was convicted by a jury on charg-
es of assault and battery by means of a dangerous weapon (a
shod foot), G. L. c. 265, § 15A, and assault by means of a
dangerous weapon (a knife), G. L. c. 265, § 15B.  The sole
issue on appeal concerns the exclusion of certain testimony
on cross-examination of the victim's wife.  We affirm the
convictions.

We summarize the evidence and rulings pertinent to the issue. The victim, one Malone, separated from his wife in October, 1979. The separation was caused in part by her relationship with McCreary. In November, 1979, McCreary began living with Malone's wife, but she also continued to see her husband. On February 8, 1980, Malone went to the marital home at his wife's invitation under the belief that McCreary would not be there. Shortly after he arrived, however, McCreary returned. At some point thereafter, McCreary, in the presence of Malone's wife, struck Malone, knocked him down, and kicked him repeatedly and savagely about the chest with his booted foot. Then, while Malone lay semi-conscious on the floor, the defendant took a knife from the kitchen and pointed it at Malone, telling him, "I could kill you." As a result of the beating, Malone required surgery and was hospitalized for two weeks with serious injuries. Malone denied that he had been armed at the time of the encounter or that he had done anything to provoke the attack. He admitted in cross-examination that prior to this incident, he had threatened his wife with physical harm, and that he and McCreary had exchanged words regarding his wife. However, he denied that he had ever made threats against McCreary.

McCreary took the stand and testified in detail about several prior incidents in which Malone had threatened him, including one incident in which Malone had said he would "break [my] legs . . . [and] blow [me] away with [his] shotgun." McCreary claimed that the assaults were acts of self-defense precipitated by Malone's putting his hand into his coat pocket. He testified that due to the prior threats, this gesture led him to believe that Malone was armed and about to attack him with deadly force.

Malone's wife was called by the Commonwealth. On direct examination, she corroborated her husband's testimony that the assaults were unprovoked and his testimony concerning the details and seriousness of the assaults. On cross-examination she testified to the fact that she and her husband had frequent telephone conversations concerning her

relationship with McCreary. She stated that McCreary had been present for "most all" of the calls, that he had heard or been told about others because she "wasn't hiding anything" from him, and that he had spoken directly to her husband on other occasions.

Later in cross-examination, she was asked by defense counsel: "Did you have an argument with your husband about the fact that Mr. McCreary was living in your house?" The prosecutor objected and the judge stated "[t]he husband-wife privilege," adding that "[s]he doesn't have to claim it. It can be raised by objection." Following a bench conference which is set forth in the margin,[1] the objection was sustained and questioning resumed on other topics.

Defense counsel was thereafter permitted to inquire, over the prosecutor's objection, about an incident at a cafe where the witness and her husband had "quite an argument" in McCreary's presence. The witness testified that she could not recall whether her husband had threatened the defend-

---

[1] "DEFENSE COUNSEL: As I understand it, your Honor, I realize the situation is about the marital breach, but as I understand the most recent case that came down, and I don't even know the name and, frankly, I'm not here with a cite or anything, but if, indeed, their relationship is so shattered, there is no privilege here, I don't think.

This woman has testified that she's been beaten. That he even admitted that he hit her. I'm going to get into the fact that she was hit by him more than once or on two occasions by Mr. Malone.

THE COURT: No conversation.

THE PROSECUTOR: The gist of the Commonwealth's objection is that I think that we're here to try what happened on the date in question about a kicking and beating.

THE COURT: Well, if that's the objection, on cross-examination under the Facente case, it's so broad that you've got to let him have it for awhile.

THE PROSECUTOR: Well, I think that's why the Commonwealth hasn't objected in each and every question, but the Commonwealth thinks we've got some relevancy problem here. Not to mention the privilege.

DEFENSE COUNSEL: I could tell you what I'm trying to lead at, and, frankly, it's that this is the woman who knows about threats that were made to Mr. McCreary, which is kind of important to his defense, so I would respect [sic] a little latitude. She's the woman who's . . .

THE COURT: You'll get what you're entitled to. That's all."

ant at that time. Defense counsel asked whether that answer "impl[ied] that there were times that Mr. McCreary was threatened by your husband that you know of?" An objection was then taken and properly sustained since the question was, in our view, improper as to form.

The witness was next asked: "Were there other times when you did overhear conversations between your husband and Mr. McCreary where threats were made by your husband to Michael?" The witness replied that there had been one such occasion, and defense counsel inquired as to the "substance of the threat." The witness responded as follows: "He called the house . . . and he told me that he had a gun. That he was going to shoot me . . . [a]nd he told me that he didn't care who was there. 'Tell Michael and his cousin to come outside,' and he said that he'd kick both their asses. Michael grabbed the phone from me and then they were talking." The prosecutor moved that "the whole line be stricken" because "[t]he question was, did you hear a threat?" The judge allowed the motion.

Defense counsel next asked the witness: "After having that telephone conversation with [your husband] were you pretty well convinced that that was a threat?" On objection by the prosecutor, this inquiry was correctly excluded as "not a proper question." Cf. *Sudbury* v. *Department of Pub. Util.*, 351 Mass. 214, 220-221 (1966). The witness testified that after this call, the defendant and his cousin went outside and waited about thirty to forty-five minutes for her husband to arrive, but nothing occurred that evening. The witness then stated, without objection, that she had received "similar phone calls from [her] husband in [the] same vein." Defense counsel asked whether she had received similar calls "with the focus on Mr. McCreary," and whether she usually repeated the substance of the conversations between herself and her husband to the defendant. However, the prosecutor's objections to both of these questions were properly sustained, since the meaning of the former was vague and indefinite, see Leach & Liacos, Massachusetts Evidence § 4(B)(1)(c), at

69 (4th ed. 1967), and the latter, in context, was framed too broadly to elicit information relevant here, see *Commonwealth* v. *Kennedy*, 3 Mass. App. Ct. 218, 223 (1975). See also *Commonwealth* v. *Slaney*, 345 Mass. 135, 142 (1962); *Commonwealth* v. *Barras*, 3 Mass. App. Ct. 43, 47 (1975).

McCreary argues[2] that a victim's prior threats against a defendant are admissible in a prosecution for assault to establish self-defense; and that, therefore, testimony regarding prior threats by Malone was admissible to show that at the time of the assault, Malone was seeking to carry out those threats, and that McCreary acted out of a reasonable fear for his own safety. See *Commonwealth* v. *Rubin*, 318 Mass. 587, 588 (1945); *Commonwealth* v. *Edmonds*, 365 Mass. 496, 499-500 (1974); 1 Torcia, Wharton's Criminal Evidence §§ 224-225 (13th ed. 1972). The defendant argues further that the exclusion of favorable testimony offered by an independent witness, if erroneous, is not necessarily cured by the defendant's own testimony on the same point. See generally *Commonwealth* v. *Goldberg*, 212 Mass. 88, 91 (1912); *Commonwealth* v. *Britland*, 300 Mass. 492, 496 (1938). Contrast *Commonwealth* v. *Rubin, supra* at 591-592. As general propositions, we have no quarrel with these threshold contentions.

Here, however, we think that the testimony of Malone's wife was correctly excluded in each of the instances set out above. Although prior threats are a proper subject for examination, testimony concerning them must still be introduced in a way which satisfies the formal concerns of the rules of evidence. Of the six questions in issue here, objections to four were correctly sustained, as noted above, because of improper form. In addition, the answer to a fifth question was struck on the ground it was unresponsive. That ground is clearly applicable in this instance since the question inquired as to the substance of a threat made in a conversation between Malone and McCreary, and the answer related a threat made in a conversation between

---

[2] McCreary is represented by new counsel on appeal.

Malone and his wife. Although a trial judge is not compelled to strike such an unresponsive answer, assuming that the testimony therein is both competent and relevant, *Commonwealth* v. *Strickland*, 11 Mass. App. Ct. 928 (1981), and cases cited, we cannot say the judge abused his discretion in doing so here. See *Commonwealth* v. *Charles*, 4 Mass. App. Ct. 853 (1976).

The remaining ruling assigned as error dealt with the question whether Malone and his wife argued "about the fact that Mr. McCreary was living in your house." The judge's remarks immediately following that question and the ensuing bench conference (see note 1, *supra*) make it apparent that his rulings on the objection sought (1) to respond to the prosecutor's objection based on relevancy by exercising his discretion to permit defense counsel some latitude in cross-examining the wife as to events preceding and germane to the assaults (see *Commonwealth* v. *Granito*, 326 Mass. 494, 496 [1950]; *Commonwealth* v. *Underwood*, 358 Mass. 506, 513 [1970]; *Commonwealth* v. *Franklin*, 366 Mass. 284, 289 [1974]), and (2) to advise defense counsel that the disqualification expressed in G. L. c. 233, § 20, as amended through St. 1963, c. 765, § 3,[3] barred testimony by the wife about the contents of private marital conversa-

---

[3] Section 20 of G. L. c. 233, reads in part: "Any person of sufficient understanding, although a party, may testify in any proceeding, civil or criminal, . . . except as follows: "First, Except in a proceeding arising out of . . . a contract made by a married woman with her husband and except in a proceeding under . . . [c. 273A] and in a prosecution begun under . . . [§§ 1-10, inclusive, of c. 273], neither husband nor wife shall testify as to private conversations with the other. Second, Except as otherwise provided in [G. L. c. 273, § 7], neither husband nor wife shall be compelled to testify in the trial of an indictment, complaint or other criminal proceeding against the other." The first clause of this statute "has been treated as creating a disqualification of both spouses to testify to private conversations," and this is distinguished from the "privilege" created by the second clause, "which must be appropriately claimed and may be waived." *Commonwealth* v. *Gillis*, 358 Mass. 215, 216-217 (1970). See *Commonwealth* v. *Stokes*, 374 Mass. 583, 594-595 (1978); *Commonwealth* v. *O'Brien*, 377 Mass. 772, 774-775 (1979). Cf. *Trammel* v. *United States*, 445 U.S. 40, 50-51 (1980).

tions.[4]  With respect to the judge's second ruling, we think
defense counsel failed effectively to "make[ ] known" to the
judge the discrete ground of any error which he perceived in
the ruling[5] (Mass.R.Crim.P. 22, 378 Mass. 892 [1979];
*Commonwealth* v. *Harris*, 371 Mass. 462, 471 [1976]; Rule
8 of the Superior Court [effective September 1, 1980]), or to
express to the judge any basis which might render the dis-
qualification inapplicable.  Given the rather confused dis-
cussion of the rulings at the bench conference, we think that
the "[d]efendant's vague protestations against excluding the
evidence were insufficient to assist the trial judge in making
a rational determination of its admissibility." *Wright* v.
*Hartford Acc. & Indem. Co.*, 580 F.2d 809, 810 (5th Cir.
1978).  In the absence of any proper specification of
grounds supporting admission of the testimony, the objec-
tion to the question was correctly sustained.[6]

---

[4] The judge initially stated that his ruling was based on the "husband-
wife privilege."  However, it appears that he actually had in mind the
statutory disqualification, given his later admonition to defense counsel
regarding the inquiries he intended to exclude ("no conversation"), and
given the fact that Malone's wife had already waived the privilege by
testifying.

[5] If the theory of such error depended on a finding of preliminary facts,
it was also defense counsel's obligation to draw the judge's attention to the
testimony which established such facts or, if appropriate, to request a voir
dire in order to prove them.  See *Commonwealth* v. *Stokes*, 374 Mass.
583, 594-595 (1978).

[6] We therefore need not discuss the defendant's present arguments for
the admissibility of this evidence, i.e., that the prosecutor's failure to base
his objection exclusively on the disqualification converted it into a
privilege which could have been found to be waived (citing Hughes, Evi-
dence § 127, at 114 [1961]); and that the prosecutor failed to satisfy what
is said to be his burden to show that the argument in question was a
private conversation invoking the disqualification (citing *Wireless Spe-
cialty Apparatus Co.* v. *Priess*, 246 Mass. 274, 278 [1923]).  These addi-
tional arguments were made in response to our request at oral argument
that the applicability of the disqualification be discussed in supplemental
briefs.  Ultimately, however, we think that the failure of trial counsel to
present such arguments at trial makes it unnecessary to consider them on
appeal.  See *United States* v. *Sims*, 617 F.2d 1371, 1377 (9th Cir. 1980).

The defendant argues, however, that, in view of the judge's inclination to find the evidence relevant, the application of the disqualification to exclude the answer denied him his constitutional right of confrontation and his right to meaningful cross-examination on an important issue. See *Commonwealth* v. *Johnson*, 365 Mass. 534 (1974); *Chambers* v. *Mississippi*, 410 U.S. 284 (1973); *Davis* v. *Alaska*, 415 U.S. 308 (1974). Despite the judge's general comments at the bench conference on the scope of cross-examination, the question as phrased was at best marginally relevant in that the subject argument was not placed anywhere within the three-month period when McCreary was living with Malone's wife. Furthermore, the fact that Malone's wife may have had such an argument with her husband is not clearly relevant since the issue of self-defense turned not on her state of mind but on that of McCreary himself. These considerations — coupled with defense counsel's failure to specify appropriate grounds for avoiding the disqualification, and the fact that the jury had been made well aware of the friction between Malone and his wife over her affair with McCreary — satisfy us that the disqualification did not operate to exclude evidence which if admitted might have had a significant impact on the result of the trial. See and contrast *Commonwealth* v. *Bohannon*, 376 Mass. 90, 92-95 (1978).

The defendant makes a number of other arguments on appeal.[7] Since they were not articulated below, they need not be considered here. See note 6, *supra*. We note in closing, however, that the exclusion of the contested testimony on threats did not prevent the defendant from making an adequate presentation of his theory of self-defense. The jury

_____

[7] As to the exclusion of the answer regarding the threat made by Malone in the telephone call with his wife, the defendant now argues that this conversation was not private because McCreary overheard the wife's portion of the discussion; because the wife had disclosed the substance of prior conversations to McCreary; and because Malone did not expect this conversation to be treated as confidential but rather intended that it be communicated to McCreary. See generally *Linnell* v. *Linnell*, 249 Mass. 51, 54 (1924).

heard testimony regarding Malone's prior threats from the defendant, and this evidence was supported by the testimony of Malone's wife that she also heard such threats on at least one occasion. Moreover, McCreary received complete instructions on self-defense and the Commonwealth's burden to disprove it, including an instruction that in passing on the reasonableness of the defendant's conduct the jury could consider "the real or apparent requirements of the occasion, and other circumstances such as prior threats . . . ." Finally, as to the charge of assault with a knife, it may be said with some certainty that the claim of self-defense could not have succeeded on any reasonable view of the evidence, since the uncontroverted testimony established that this assault occurred after Malone had been rendered virtually helpless. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 212 (1966).

*Judgments affirmed.*