COMMONWEALTH vs. JOSE L. NIEVES.

Essex. October 4, 1984. — March 29, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN & O'CONNOR, JJ.

*Homicide. Practice, Criminal*, Capital case, Instructions to jury.

At a murder trial, language in the judge's instructions to the jury, which
they might reasonably have interpreted as establishing a mandatory pre-
sumption of malice, or as placing on the defendant the burden of proving
that he acted in the heat of passion on sudden provocation, violated due
process principles as articulated by the United States Supreme Court in
*Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), and *Sandstrom* v. *Montana,*
442 U.S. 510 (1979), and, in the circumstances, necessitated reversal
of the defendant's conviction of murder in the second degree. [358-362]

INDICTMENT found and returned in the Superior Court on
May 21, 1974.

The case was tried before *Roger J. Donahue,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Michael S. Gallagher* for the defendant.

*Dyanne Klein Polatin,* Assistant District Attorney, for the
Commonwealth.

O'CONNOR, J. The defendant was indicted for murder in
the first degree for the shooting death of John Mikinnis. He
was convicted of murder in the second degree and sentenced
to life imprisonment at the Massachusetts Correctional Institu-
tion at Walpole. After considerable delay, the defendant's ap-
peal was entered in the Appeals Court. That court summarily
affirmed the defendant's conviction. 15 Mass. App. Ct. 1102
(1983). A single justice of this court, treating the defendant's
petition to docket his appeal as an application for further appel-
late review filed late, referred the case to the full court in order
that the defendant receive the review to which he is entitled

under G. L. c. 278, § 33E.[1] We now reverse the defendant's conviction.

The evidence presented at trial was substantially as follows. On the night of April 11, 1974, the defendant and a companion met at a bar in Lawrence owned and operated by the victim, John Mikinnis. There were approximately eight other people in the bar, one of whom was Betty Merrick, Mikinnis's girlfriend. Sometime after midnight, the defendant approached Merrick and began to bother her. Mikinnis told the defendant that he would have to leave, and the two men walked toward the door. Merrick testified that she saw a gun in the defendant's hand as he walked toward the door. There was conflicting testimony as to whether Mikinnis, who was much larger than the defendant, shoved or threw the defendant out the door, or merely walked with him toward the door. Various witnesses testified that they heard two loud noises which sounded like firecrackers, "pops," or gunshots as the two men stood in the doorway. Mikinnis then walked back behind the bar, sat down, and stated that he had been shot. He died later that day from gunshot wounds to the chest and abdomen.

Because the defendant alleges error in the judge's charge to the jury on the issue of burden of proof, we summarize the relevant portions of the charge and set forth the challenged language in full. The judge began by instructing the jury that the defendant is presumed to be innocent, and that the Commonwealth has the burden of proving every essential element of the crime charged. He discussed the concept of reasonable doubt, and repeated that the Commonwealth is obligated "to prove the essential elements of the crime as charged. . . . And each and every essential element must be proved to you to a

---

[1] Prior to its amendment in 1979 (St. 1979, c. 346, § 2), G. L. c. 278, § 33E, provided for special review of all capital cases, defined as cases which charged murder in the first degree in which a verdict of murder in the first or second degree was returned. The defendant was indicted for murder in the first degree and convicted of murder in the second degree. Because the incident which resulted in his conviction occurred prior to July 1, 1979, the effective date of the amendment to G. L. c. 278, § 33E, he is entitled to review under § 33E. *Commonwealth* v. *Davis,* 380 Mass. 1, 16-17 (1980).

point beyond a reasonable doubt." He instructed the jury to draw no inference from the defendant's decision not to testify, and again charged, "It is the government's burden to prove its case against the defendant. The defendant does not have the burden of proving himself innocent. And that burden is always upon the government and never shifts to the defendant."

The judge then turned to the crimes of murder in the first degree, murder in the second degree, and manslaughter. He defined murder in the first degree as "a killing which is deliberately premeditated with malice aforethought," and murder in the second degree as "an intentional killing with malice aforethought." On the required element of malice, the judge charged, "Any intentional killing of a human being without legal justification or excuse, with no extenuating circumstances sufficient to reduce the crime to manslaughter, is malicious within the meaning of that expression . . . . " He further charged, "If a man intentionally and without legal justification, excuse or extenuation uses upon the body of another a force, for example, a bullet from a revolver, and that as used would probably do grievous bodily harm to that other and will create a plain and strong likelihood that the other will die as a result, the act implies malice within the meaning of the law . . . . And our law says, when the killing is caused by the intentional use of a deadly weapon, there arises a presumption of malice aforethought . . . . Hence in this case, if you find that on April 12, 1974, the Defendant Nieves took out a gun and fired it at John Mikinnis and killed him without justification or excuse or any extenuating circumstances to reduce it to manslaughter, then that is murder with malice aforethought, murder in the second degree."

After defining the term "deliberate premeditation," and explaining the difference between first and second degree murder, the judge discussed voluntary manslaughter.[2] The judge told the jury that the difference between murder and manslaughter was the absence of malice. He defined manslaughter as "the

---

[2] The Commonwealth does not contend that an instruction on manslaughter was inappropriate.

unlawful killing of a human being by another without malice but in sudden passion or heat of blood caused by reasonable provocation or upon sudden combat." The judge explained what is meant by "reasonable provocation," and by "sudden passion or heat of blood." He then stated that the passion "must have existed at the time of the killing and must have been the moving cause of the killing in order to reduce the crime to manslaughter. . . . [Y]ou must find the provocation. And you must find from all the evidence a state of mind in the Defendant which shows sudden passion and anger. . . . In other words, in order for you the jury to find sufficient facts to reduce in your mind this killing from murder to manslaughter, you would have to find that John Mikinnis provoked the Defendant."

The judge then reiterated that the Commonwealth has the burden of proving the essential elements of the crime. He stated: "If the government has proven all essential elements of second-degree murder to a point beyond a reasonable doubt, then the government is entitled to a guilty finding of second-degree murder. If there is reasonable doubt in your mind, that reasonable doubt must be resolved in favor of the Defendant, and you must return a verdict of not guilty as to second-degree murder.

"Then you would go on, if you reach that point, to the question of manslaughter. If you found sufficient provocation, as I have given you the law on that issue, and sufficient anger and passion on the part of the Defendant to reduce this killing from murder to manslaughter, and the government has sustained the burden of proof as I have given it to you on each and every element of voluntary manslaughter, the government would be entitled to a guilty finding of voluntary manslaughter, if it has proven its case in that regard to a point beyond a reasonable doubt."

On appeal, the defendant alleges that the judge's charge unconstitutionally shifted the burden of proof to the defendant on the issue of malice, thus depriving him of due process of law. The defendant did not object at trial to those portions of the judge's charge that he now challenges on appeal. Ordinarily, when we review a conviction pursuant to G. L. c. 278,

§ 33E, if there was no objection at trial, our task is limited to determining whether there is a substantial risk of a miscarriage of justice. However, we will excuse the failure to raise a constitutional issue at trial if the theory on which the defendant has relied was not sufficiently developed at the time of trial to afford the defendant a genuine opportunity to raise his claim at that time. See *Commonwealth* v. *Rembiszewski,* 391 Mass. 123, 126 (1984); *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 248, 251 (1980). In such a case, "[i]f constitutional error has occurred, we reverse the conviction unless the error was harmless beyond a reasonable doubt." *Rembiszewski, supra.*

The defendant bases his challenge to the judge's charge on the United States Supreme Court's decisions in *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), and *Sandstrom* v. *Montana,* 442 U.S. 510 (1979). The defendant's trial occurred in February, 1975, prior to the Supreme Court's decision in *Mullaney.* In *Hankerson* v. *North Carolina,* 432 U.S. 233 (1977), the Supreme Court held that *Mullaney* was fully retroactive. In *Commonwealth* v. *Stokes,* 374 Mass. 583, 588-590 (1978), we held that with respect to trials occurring before *Mullaney,* we would not require a specific objection to the judge's instructions on burden of proof in order to secure appellate review. Therefore, we review the judge's charge to determine whether it comports with principles set forth in *Mullaney.*

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). *Commonwealth* v. *Rodriguez,* 370 Mass. 684, 689 (1976). A presumption which shifts to the defendant the burden of disproving any element of the crime charged thus violates the due process clause. In *Sandstrom* v. *Montana, supra* at 513-514, the Supreme Court held that an instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," might have been interpreted as relieving the State of its burden of proof on the crucial issue of the defendant's state of mind, and was therefore unconstitutional. The requirement of proof beyond a reasonable doubt also extends to the existence of

facts or circumstances which would mitigate the degree of the defendant's culpability. *Mullaney* v. *Wilbur, supra* at 697-698. Thus, when the issue is properly raised, in order to obtain a murder conviction the Commonwealth must prove the absence of the heat of passion on sudden provocation beyond a reasonable doubt. *Id. Commonwealth* v. *Stokes, supra* at 592.

The defendant alleges that the judge's charge to the jury was deficient on both *Sandstrom* and *Mullaney* grounds. He alleges that the charge created a presumption of malice, see *Sandstrom, supra* at 524, and that it placed on the defendant the burden of proving that he acted in the heat of passion on sudden provocation. *Mullaney, supra* at 703-704. In assessing the sufficiency of the jury instructions, we consider the charge in its entirety, to determine the "probable impact, appraised realistically . . . upon the jury's fact-finding function." *Commonwealth* v. *Richards,* 384 Mass. 396, 399-400 (1981), quoting *United States* v. *Wharton,* 433 F.2d 451, 457 (D.C. Cir. 1970). "[W]hether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction[s]." *Sandstrom, supra* at 514. A jury charge will be upheld if it "clearly placed the burden of proving malice beyond a reasonable doubt on the Commonwealth and contained other discussion which, although not referring to the burden of proof as to . . . reasonable provocation, adequately defined [that factor] and established [it] as negating a finding of malice." *Commonwealth* v. *Stokes, supra* at 591.

Reviewing the charge in its entirety, we conclude that a reasonable jury could have interpreted the charge as establishing a presumption of malice and as shifting to the defendant the burden of proving that he acted in the heat of passion on sudden provocation. The judge charged that when a killing is caused by the use of a deadly weapon, "the act implies malice within the meaning of the law," and "our law says . . . there arises a presumption of malice aforethought." A jury might easily have interpreted that language as creating a mandatory presumption; in other words, "an irrebuttable direction by the court to find [malice] once convinced of the facts triggering

the presumption." *Sandstrom, supra* at 517. Alternatively, the jury might have interpreted the charge as establishing a rebuttable presumption. Relating the instructions to the facts of the case, the judge charged "if you find that . . . the Defendant . . . took out a gun and fired it at John Mikinnis and killed him without justification or excuse or any extenuating circumstances to reduce it to manslaughter, then that is murder with malice aforethought." A jury might have inferred from those instructions that if the Commonwealth proved the use of a deadly weapon, malice was to be presumed, unless the defendant rebutted that presumption with evidence of extenuating circumstances. This case thus differs from other cases in which we have concluded that despite the use of "presumption" language, the charge as a whole made it clear that a finding of malice was not required. See, e.g., *Commonwealth* v. *Doucette*, 391 Mass. 443, 451-452 (1984); *Commonwealth* v. *Festa*, 388 Mass. 513, 514-515 (1983).

The judge also erred in his repeated use of "finding" language in connection with the issue whether the defendant acted in the heat of passion or sudden provocation. For example, the judge charged that "you must find the provocation. And you must find from all the evidence . . . sudden passion and anger." He later charged that "to find sufficient facts to reduce in your mind this killing from murder to manslaughter, *you would have to find that John Mikinnis provoked the Defendant.*" This language is similar to the language which required reversal of the defendants' convictions in *Commonwealth* v. *Richards, supra* at 404-405, *Connolly* v. *Commonwealth*, 377 Mass. 527, 534 (1979), and *Commonwealth* v. *Rodriguez, supra* at 690. Such language suggests that the jury must find, by at least a preponderance of the evidence, that the defendant acted in the heat of passion on sudden provocation. However, it is sufficient for acquittal on the murder charge that there be reasonable doubt whether the defendant acted in heat of passion. See *Commonwealth* v. *Richards, supra* at 405; *Connolly* v. *Commonwealth, supra.*

The Commonwealth argues that the judge's repeated instruction that the Commonwealth had the burden of proving beyond

a reasonable doubt the essential elements of the crime was sufficient to mitigate any error in other portions of the charge. However, the judge's instructions "treated the issue of burden of proof only in general terms . . . . At no time did he discuss the burden of proof as to malice . . . ." *Commonwealth* v. *Stokes, supra* at 591. Moreover, the fact that some of the instructions were correct is not determinative because "we cannot know whether the jury were guided by the correct or the incorrect portion of the instruction." *Commonwealth* v. *Richards, supra* at 403, quoting *United States* v. *Green*, 405 F.2d 1368, 1370 (D.C. Cir. 1968), aff'd, 424 F.2d 912 (D.C. Cir. 1970), cert. denied, 400 U.S. 997 (1971).

Because the jury might have interpreted the instructions as establishing a mandatory presumption of malice or as placing on the defendant the burden of proving heat of passion, either of which would violate the due process clause, the instructions were unconstitutional. *Sandstrom* v. *Montana, supra* at 524. *Mullaney* v. *Wilbur, supra* at 703-704. Unless the error was harmless beyond a reasonable doubt, we must reverse the defendant's conviction. We have previously noted that the "issue of burden of proof goes to the very heart of the truthfinding function of the criminal trial and, as such, raises 'serious questions about the accuracy of guilty verdicts.'" *Commonwealth* v. *Stokes, supra* at 589, quoting *Hankerson* v. *North Carolina*, 432 U.S. 233, 241 (1977). Therefore, although the Commonwealth's case against the defendant was strong, we cannot say that the errors in the charge were harmless beyond a reasonable doubt.

Because the remaining issues raised by the defendant are unlikely to arise at a new trial, we do not address them.

*Judgment reversed.*

*Verdict set aside.*