COMMONWEALTH *vs.* BARRETT L. OWENS.

Bristol. May 2, 1988. — June 20, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Rape. Evidence*, Fresh complaint. *Witness*, Corroboration. *Practice, Criminal*, Argument by prosecutor.

At the trial of indictments charging assault by means of a dangerous weapon and rape, the judge's ruling allowing the victim's friend to testify regarding the victim's statements, made in the friend's presence, to a rape crisis counselor, without also requiring that the counselor's questions be placed in evidence, was adequately responsive to the defendant's objection that the counselor's questions should not be allowed in evidence through the third-party witness, and was not subject to challenge on grounds other than those presented to the judge. [640-642]

A prosecutor's remarks to the jury during closing argument at a criminal trial, which the defendant alleged to have improperly asserted matters not in evidence and vouched for the credibility of Commonwealth witnesses, contained no impropriety in the circumstances. [642-644]

INDICTMENTS found and returned in the Superior Court Department on November 26, 1985.

The cases were tried before *William H. Carey*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*Cynthia A. Vincent*, Assistant District Attorney (*Dana A. Curhan*, Assistant District Attorney, with her) for the Commonwealth.

HENNESSEY, C.J. The defendant appeals from his convictions in Superior Court of assault by means of a dangerous weapon and rape. The defendant cites two grounds of error. First, he argues that the Superior Court judge erred in allowing the victim's friend to testify regarding the victim's statements,

made in the friend's presence, to a rape crisis counselor, without also requiring that the counselor's questions be placed in evidence. Second, he argues that the prosecutor's summation contained improper argument which created a substantial risk of a miscarriage of justice. We affirm.

1. Following the alleged rape the victim left the scene, went to a nearby restaurant, and telephoned a friend. The friend drove to the restaurant, met the victim, and drove her to a hospital where she was examined. While at the hospital the victim had a conversation with a rape crisis counselor. The victim's friend was present during the conversation.

At trial, the prosecutor sought to have the friend testify regarding the conversation. Defense counsel objected, but was overruled. At an ensuing bench conference, reproduced in material part in the margin,[1] the judge correctly ruled that under the fresh complaint rule the witness could relate what he heard

---

[1] The following discussion occurred at the bench conference:

DEFENSE COUNSEL: "I assume this is being offered under the fresh complaint idea."

THE COURT: "I assume so."

DEFENSE COUNSEL: "Well, the problem I think is that — whether or not it's still a fresh complaint is another question, but I think to try to offer it through a third party is not — is not a productive way to do it. . . . I'm simply pointing out that this is the awkward nature of this thing. And I don't think it's the right way to do it. The first question off the box, he [the witness] can't answer it correctly."

THE COURT: "It may not be the preferable way to do it, but I think it's admissible if he were present and he in fact heard the fresh complaint made by her to someone else. In his presence."

DEFENSE COUNSEL: "I understand that. But the question was what conversation did you overhear between those two people. And first of all, I think the rape crisis people are frequently trained — they have techniques that they employ. If that person is not here to be cross-examined, I don't think that he [the witness] should be permitted to testify to what she said and then what [the victim] said, and that type of thing, as if it were some kind of a transcript of what was said.

"I think that that's not an appropriate way to do it. And I object to it."

THE COURT: "Well, I'm going to permit it insofar as to what he [the witness] heard her say. I'm not going to permit it insofar as to what type of interrogation between the rape crisis counselor, if there was one, and this particular victim.

"It's limited to what she told the rape crisis counselor in her [*sic*] presence. And I'll permit it. As to the interrogation, if there be any, I'll exclude it."

the victim say to the counselor. See *Commonwealth* v. *Barbosa*, 399 Mass. 841, 848-849 (1987). However, in response to defense counsel's arguments, the judge also ruled that the witness could not relate the counselor's side of the conversation. Defense counsel did not object to this approach.

The defendant paradoxically argues that the "judge erred in admitting as purported fresh complaint the testimony of [the friend] as to only the alleged victim's portion of a conference with a rape crisis counselor, inasmuch as the defendant's right of confrontation demanded presentation of the whole of the conversation or none of it." In the same vein, the defendant also contends, beginning with the premise that fresh complaint statements to be admissible must be voluntary, citing *Commonwealth* v. *Hanger*, 357 Mass. 464, 466-467 (1970); *Commonwealth* v. *Ellis*, 319 Mass. 627, 630 (1946), that where the counselor's questions were not in evidence, it is impossible to determine the voluntariness of the victim's statement to the counselor. However, defense counsel failed to make known to the judge these objections to the ruling. Indeed, his argument to the judge was, essentially, that the counselor's questions should not be allowed in evidence through the third-party witness. In these circumstances, the arguments, whatever their merit, are not available to the defendant on appeal. See, e.g., *Commonwealth* v. *Rivera*, 397 Mass. 244, 250 (1986); *Commonwealth* v. *Gallison*, 383 Mass. 659, 669 (1981); *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979); *Commonwealth* v. *Cheek*, 374 Mass. 613, 615 (1978). See also *Commonwealth* v. *McCreary*, 12 Mass. App. Ct. 690, 696 (1981) ("[d]efendant's vague protestations . . . were insufficient to assist the trial judge in making a rational determination of [the evidence's] admissibility") quoting *Wright* v. *Hartford Acc. & Indem. Co.*, 580 F.2d 809, 810 (5th Cir. 1978).[2] In short,

---

[2] We note that the defendant was apparently free on cross-examination to inquire of the witness regarding the counselor's questions under the rule of *Commonwealth* v. *Britland*, 300 Mass. 492, 495-497 (1938) (where one party puts part of conversation in evidence, other party is entitled to put in evidence balance of what was said). The judge's ruling limiting the prosecution's direct examination did not alter this. In any event, defense counsel's

we conclude, from our reading of the colloquy between judge and defense counsel, that the judge could fairly decide that his ruling was responsive to the defendant's objection. There was no error.

2. The defendant also complains of the prosecutor's closing argument. The defendant argues that the prosecutor's remarks concerning the testimony of the victim and a police officer contained improper assertions of matters not in evidence.[3] See *Commonwealth* v. *Hoppin*, 387 Mass. 25, 30 (1982). He also contends that through these remarks the prosecutor improperly vouched for the witnesses' credibility. See *Commonwealth* v. *Villalobos*, 7 Mass. App. Ct. 905, 905 (1979).

Because no objection was made to the prosecutor's closing argument, the defendant requests that we review the impact of the alleged improprieties to determine whether they created a substantial risk of miscarriage of justice. See, e.g., *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 884 (1984), citing *Commonwealth* v. *Baptiste*, 372 Mass. 700, 712 (1977); *Commonwealth* v. *Earltop*, 372 Mass. 199, 203-204 (1977). This we need not do, for in the circumstances here we discern no impropriety in the prosecutor's remarks.

During his closing argument defense counsel anticipatorily discussed the fact that the victim was willing to testify

failure to even attempt the line of questioning is some indication that he entertained no desire at time of trial, in contrast to the interest expressed on appeal, to have the counselor's questions placed in evidence.

[3] The defendant points to the following passages from the prosecutor's closing argument with emphasis as added by the defendant: "You saw [the victim]. She came here and testified. *She didn't enjoy being here. She didn't enjoy being here. She didn't want to come here and get on the stand and tell you that story of what happened to her. But she came here. She knew that her character and her values would be put in question in this case, and she would be placed on trial. But she knew that she had to do the right thing.*"

"And then you heard from Sergeant O'Neil. And do you really, really believe that Sergeant O'Neil came here and is trying to set up Barrett Owens in this case? Do you really believe that? Do you really believe that he made up those things that are in his statement, in his police report? . . . *Sergeant O'Neil doesn't have any ax[e] to grind in this case. He has a job to do. And you know what? He did his job real well in this case. That's the bottom line: He did his job well.*"

and accuse the defendant of the crimes charged.[4] Counsel intimated she did so out of guilt and low self-esteem over having engaged in what the defendant described in his testimony as consensual casual sexual activity. Defense counsel also spoke about the police officer, and indicated that his investigation improperly began with the assumption that a rape had occurred, and that his resultant testimony, and the investigation itself, was necessarily biased against the defendant.[5] All of this was

---

[4] "So, I want to just try to anticipate one thing which I think he may say, and to respond to it. Anticipatorily, if you will. And that is, why would she come in here and tell this story and say this if it didn't happen. Now, that's phrased as if she was driving down Route 6 one day and said: I think I'll go down to the courthouse and say that Barrett Owens raped me. Okay? Why would a person do that? They wouldn't do it. That doesn't make any sense. But that's not what happens in cases. And that's not what happened in this case. No question about the time that they engaged in sexual relations and intercourse at 2:00, 3:00 o'clock in the morning, whatever time it was, . . . that morning. And I suggest to you — and again, I don't have to answer this question. It's not incumbent upon the defendant to prove to you why this would happen — but I want to respond to it because it's a frequently used red herring by the government to cover up the deficiencies in the case: 'Why would she come in here and say this if it weren't true?' Well, one of the unfortunate legacies of the sexual revolution is that people learned that through casual sexual relations, and she'd never met him before, she'd met him for ten minutes one night, that sex without love and sex without commitment makes you feel lousy. . . . But in any event, 3:00 or 4:00 o'clock in the morning, not feeling too well about it, she calls up her fiancé, and she says: 'I was raped.'"
Defense counsel continued by arguing that once the victim told her fiancé she was raped, she could not abandon that version of the events and eventually testified consistent with it.

[5] "One thing I want to mention to you as evidence of what I said about Sergeant O'Neil . . . right at the outset there when I asked Sergeant O'Neil: 'What's the first thing you did with regard to this case?' He indicated he came from home around 5:30. He said: "I talked to someone.' Talked to officers and so forth. 'And then I called the victim.' He says to you at the — He doesn't know a thing about the case. He's home. He comes in. He hears a preliminary report of the thing orally from some police officer and comes to the conclusion on June 1st, 1985, at 5:30 in the evening, 'We've got a victim.' And he operates for the next few days in his investigation of this case from that bias, from that presupposition. He doesn't say: 'Okay, let me make a cold-blooded, objective evaluation of the materials here and see if in fact we have a crime.' Because obviously you have to have a crime in order to have a victim. He concludes at 5:30: 'When I called in from home on a Saturday off I'm going to talk to the victim.' If he says that,

proper argument, based on the evidence or inferences from the evidence. See *Commonwealth* v. *Earltop, supra* at 205 (Hennessey, C.J., concurring). Similarly, the prosecutor's response to these arguments, see *supra,* note 3, was proper. It is a fair inference that, despite the fact she testified, the victim did not enjoy relating her ordeal in open court and did not look forward to doing so. It was also proper to comment that the police officer had "no ax[e] to grind" and had done "his job well." The officer had testified concerning his relation to the case and concerning the course of his investigation.

*Judgments affirmed.*

then what he's saying is: 'I've decided there's been a crime. And if there's been a crime, there's been a criminal. And if there's a crime, that's Barrett Owens.' And he went into that interrogation with Barrett Owens with that presupposition. And that colors his interrogation of him, it colors his recitation of his version of that to you people."