COMMONWEALTH *vs.* ALLAN F. GILLIS.

Norfolk.    September 21, 1970. — October 29, 1970.

Present: SPALDING, CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Evidence,* Conversation between husband and wife.  *Words,* "Conversation."

At the trial of an indictment for assault upon the defendant's wife with a dangerous weapon with intent to murder her, testimony by her as to threats to kill her made to her by the defendant about eight days before the assault when, while they were alone, she told him that she had seen an attorney concerning a divorce and the defendant seized a knife was not inadmissible under G. L. c. 233, § 20, as testimony relating to a private conversation.

INDICTMENT found and returned in the Superior Court on June 7, 1968.

The case was tried before *Roy, J.*

*Reuben Goodman* (*Stephen Axelrad* with him) for the defendant.

*John P. Connor, Jr.,* Assistant District Attorney, for the Commonwealth.

CUTTER, J.   Gillis was found guilty upon an indictment charging that on April 19, 1968, he assaulted his wife with a dangerous weapon with intent to murder her.  His brief, upon his bill of exceptions, argues only that one statement made by him was improperly admitted in evidence.  S. J. C. Rule 1:13, 351 Mass. 738.

Mrs. Gillis testified that she had been married to Gillis in 1958.  They had separated many times, most recently in February, 1968.  In early April, 1968, she was at her parents' house.  Gillis came to that house about eight days before the assault and was alone with her.

The prosecuting attorney asked what discussion she then had carried on with her husband.  After objection for Gillis, the prosecuting attorney represented that he would show her to have told Gillis that "she wanted a divorce," with the consequence that he became angry and said, "I am going to kill you."  The judge ruled his statement to be admissible but excluded the rest of the conversation.  Gillis's counsel

saved an exception and then asked that, if any of the conversation were to be admitted, it all be admitted. The judge allowed this to be done.

Mrs. Gillis then testified that she told Gillis she had seen an attorney concerning a divorce and that Gillis "had replied that it would never happen and he would kill her first." He "took a large steak knife from . . . [a] drawer and started to come at her . . . saying, 'I will kill you. If I can't have you nobody will.' " She told him to put down the knife. He then did nothing with it.

Mrs. Gillis testified also concerning the events on the morning of April 19, 1968. She was with one Jenner and four of her six children in an automobile. The vehicle would not start. Gillis approached the automobile and started fighting with Jenner. She asked Gillis to go into the house. As she walked through the backyard, Gillis "punched her twice. He kicked in the door." Inside the house, "she sat down in a rocking chair . . . with her baby and its bottle in her arms." She tried to calm Gillis. "He took a steak knife . . . yelled that he was going to kill her," and wounded her in the breast and armpit. "The knife stayed there, and she took it out and threw it towards the kitchen." He then stabbed her twice in the back.

Gillis relies upon G. L. c. 233, § 20 (as amended through St. 1963, c. 765, § 3). This section reads in part: "Any person of sufficient understanding, although a party, may testify in any proceeding, civil or criminal . . . except as follows: . . . First, Except in a proceeding arising out of . . . a contract made by a married woman with her husband and except in a proceeding under . . . [c. 273A] and in a prosecution begun under . . . [§§ 1–10, inclusive, of c. 273], neither husband nor wife shall testify as to *private conversations* with the other" (emphasis supplied).[1]

Section 20 has been treated as creating a disqualification

---

[1] Clause second of § 20 reads: "Second, Except as otherwise provided in . . . [c. 273, § 7], neither husband nor wife shall be compelled to testify in the trial of . . . [a] criminal proceeding against the other." See G. L. c. 273, § 7, with respect to certain prosecutions under c. 273, §§ 1–10, for desertion and nonsupport. Chapter 273A is the Uniform Reciprocal Enforcement of Support Act.

of both spouses to testify to private conversations and not merely a privilege which must be appropriately claimed and may be waived. See *Kaye* v. *Newhall*, 356 Mass. 300, 304. We must decide whether the spontaneous threat (cf. *Commonwealth* v. *Hampton*, 351 Mass. 447, 449–450; *Hetel* v. *Messier's Diner, Inc.* 352 Mass. 140, 141–142), in reaction to Mrs. Gillis's disclosure of her divorce plans, accompanied by the act of seizing a knife, can reasonably be regarded as a "private conversation" rather than as essentially an act (see *Cashin* v. *New York, N. H. & H. R.R.* 185 Mass. 543, 545) of abusive verbal assault, which with other evidence permits the inference that Gillis intended to kill his wife.

No Massachusetts decision in a criminal case appears to be controlling. See *Commonwealth* v. *LePage*, 352 Mass. 403, 417, fn. 12, and cases cited. In *French* v. *French*, 14 Gray, 186, 188, a libel for divorce, it was said that "[m]ere abusive language addressed by one party to the other, when they were not in conversation, might be the subject of testimony by the party . . . addressed." In *Commonwealth* v. *Jardine*, 143 Mass. 567, it was held that a wife could testify to exclamations of pain and suffering by her husband when only she was present. In *Commonwealth* v. *Cronin*, 185 Mass. 96, 97, it was decided that a wife could not testify that her husband, upon coming out of a fit of epilepsy, told her in private that he would drown himself. The court noted that this remark did not come within the language of *French* v. *French*, *supra*, "which allows abusive language addressed by a husband in private to his wife to be given in evidence to show abusive treatment." A private remark by a husband to his wife, that he wished she were dead, was excluded in *Sherry* v. *Moore*, 265 Mass. 189, 194, as not abusive in character. The statute applies only to private conversations and not to letters. See *Commonwealth* v. *Caponi*, 155 Mass. 534, 537.

The policy underlying the statutory exclusion of private marital conversations has been much discussed.[2] Whether

---

[2] McCormick, Evidence, §§ 66, 82–90; Wigmore, Evidence (McNaughton rev.) §§ 2332–2338, but see §§ 2228, 2230–2231 and (3d ed.) §§ 600–620;

the policy is to protect the marital relationship or to encourage confidence between spouses (see Wigmore, Evidence [McNaughton rev.] §§ 2332, 2336), or merely reflects legislative reticence concerning marital confidences (see McCormick, Evidence, §§ 83, 90), the purpose does not logically extend to words constituting or accompanying abuse, threats, or assaults of which the other spouse is the victim. Statements, not reasonably to be regarded as "conversation," are not within the statutory prohibition. Even if induced by private conversation, such abusive or threatening words do not have any confidential aspect within the purpose of the protection. We conclude that Gillis's threats to his wife were not rendered inadmissible by the statute.[3]

*Exceptions overruled.*

---

Uniform Rules of Evidence, § 28 (2); Am. Law Inst., Model Code of Evidence, Rules 214–218; Wigmore's Code of Evidence (3d ed.) Rule 211; Leach and Liacos, Massachusetts Evidence, 139–141; Hughes, Massachusetts Evidence, §§ 124–127; Inker and McGrath, Husband and Wife Conversations, 8 Boston Bar J. (May, 1964) p. 30. See also the several opinions in *Rumping* v. *Director of Pub. Prosecutions*, [1964] A. C. 814. Other Massachusetts discussion of the statutory rule includes *Sampson* v. *Sampson*, 223 Mass. 451, 458–459, *Freeman* v. *Freeman*, 238 Mass. 150, 161–162, *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 28, and Sixteenth Report of the Judicial Council (December, 1940), Pub. Doc. No. 144, pp. 40–41, Twenty-second Report (February, 1947), Pub. Doc. No. 144, pp. 69–78, and Forty-first Report (December, 1965), Pub. Doc. No. 144, pp. 53–54.

[3] Although much authority elsewhere is consistent with our conclusion, it is affected by somewhat different statutory provisions. Pertinent cases are collected in McCormick, Evidence, § 88, and Wigmore, Evidence (McNaughton rev.) § 2338. See *Clark* v. *Commonwealth*, 269 Ky. 587, 590–591; *People* v. *Zabijak*, 285 Mich. 164, 174–182; *Coleman* v. *Coleman*, 318 S. W. 2d 378, 379, 381–382 (Mo. App.); *People* v. *McCormack*, 278 App. Div. (N. Y.) 191, 194–197; *Hafer* v. *Lemon*, 182 Okla. 578, 581; *Wheeler* v. *State*, 220 Tenn. 155, 165–166. See also *United States* v. *Mitchell*, 137 F. 2d 1006, 1007–1009 (2d Cir.), S. C. 138 F. 2d 831 (2d Cir.), cert. den. 321 U. S. 794; *United States* v. *Walker*, 176 F. 2d 564, 567–568 (2d Cir. dictum), cert. den. 338 U. S. 891, 342 U. S. 899; *People* v. *Daniels*, 1 Cal. App. 3d 367, 377–378; *State* v. *Sparacino*, 164 La. 704, 708 (dictum); *Poppe* v. *Poppe*, 3 N. Y. 2d 312, 314–318; *Southwestern Bell Tel. Co.* v. *Nelson*, 384 P. 2d 914, 920 (Okla.); *Dowdy* v. *State*, 194 Tenn. 212, 213–214; *State* v. *Americk*, 42 Wash. 2d 504, 505–506. Cf. *State* v. *Pizzolotto*, 209 La. 644, 651 (report to wife of threat to third party); *People* v. *Oyola*, 6 N. Y. 2d 259, 265 (admission of facts, not threat); *Bernell* v. *State*, 74 Okla. Cr. 92, 99–100.