JOHN GALLAGHER[1] *vs.* GARRY A. GOLDSTEIN.

Middlesex.  February 3, 1988. — June 7, 1988.

Present: WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Evidence,* Conversation between husband and wife. *Statute,* Construction.

Where the Legislature, by enacting G. L. c. 233, § 20, First, has expressed
   a clear and unambiguous rule which disqualifies, as incompetent, evi-
   dence of private conversations between marital partners, any change in
   this rule, so as to require only such disqualification as serves the statute's
   underlying purpose or, alternatively, to make the rule one of marital
   privilege rather than disqualification, must come from the Legislature
   and not from this court. [459-461]

CIVIL ACTION commenced in the Superior Court Department
on March 13, 1984.

The case was tried before *James P. Lynch, Jr.,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Jan Richard Schlichtmann* for the plaintiff.

*Charles P. Reidy, III* (*Carol A. Kelly* with him) for the
defendant.

LIACOS, J. In this medical malpractice case, the plaintiff
alleged that the defendant physician was negligent in failing
to diagnose that Haline R. Gallagher was suffering a sub-
arachnoid (cerebral) hemorrhage. The jury returned a verdict
for the defendant, and the plaintiff appeals. We allowed the
plaintiff's application for direct appellate review.

The record discloses the following facts. In early April,
1981, the Gallaghers were working in their yard. After a short
while, John Gallagher observed that his wife had stopped
raking. She was standing with her hand on her forehead, appeared

---

[1] Individually and as guardian of his wife, Haline R. Gallagher.

pale, and complained of being dizzy. After they went inside their house, she complained of seeing "circles and stars in front of [her] eye." She experienced alternating chills and fever and complained of a "terrific" headache and pain radiating down her neck and back. After approximately three hours, her symptoms, other than the headache, neck, and back pain, abated. Haline's headache, neck, and back pain persisted. Three days later, she went to see the defendant. The defendant took her medical history and conducted a physical examination. He diagnosed her ailment as being a viral illness. He prescribed Empirin # 3 (codeine and aspirin), and advised her that the illness would last five to seven days. He told her to call him if things changed or if she did not feel better.

Two days after her visit with the defendant, Haline's symptoms remained. Her husband telephoned the defendant, who arranged for Haline to undergo blood tests. Later that day, the defendant telephoned the plaintiff and informed him that the results of the blood tests indicated that Haline had a viral infection. Two days after the blood test, Haline suffered a subarachnoid hemorrhage. As a result, she suffered brain damage and memory loss, and she is a nearly total quadraplegic. She is mentally incompetent and was unable to testify at trial.

At a bench conference during the trial, opposing counsel and the judge had a discussion regarding testimony which the plaintiff sought to admit. The proposed testimony of the plaintiff dealt with the substance of a conversation between him and his wife regarding a list of her symptoms (in reverse order of importance) which list she had prepared and had intended to go over with the defendant when he examined her. The plaintiff also proposed to testify as to conversations in which Haline had said she did go over the list with the defendant and did inform the defendant that her headache was extremely severe and had a rapid onset.[2] Defense counsel objected to the admission of this testimony on the ground that G. L. c. 233, § 20, First, disqualifies, as incompetent, evidence of private

---

[2] The potential hearsay aspects of such testimony, at least as to the statements of the wife after her visit with the defendant, are not before us.

conversations between marital partners. The judge indicated that he would allow the list to be introduced in evidence but would not allow testimony relating the private conversations between the Gallaghers. The list was admitted in evidence.

The defendant testified as to what Haline had told him when he examined her. He testified that she described her headache as a "moderate" one that was "not unduly severe." He further testified that the headache "was not something that bolted her out of the blue."

General Laws c. 233, § 20, First (1986 ed.), provides in pertinent part: "Any person of sufficient understanding, although a party, may testify in any proceeding . . . except as follows: First, Except in a proceeding arising out of or involving a contract made by a married woman with her husband . . . neither husband nor wife shall testify as to private conversations with the other." The rule established by the statute is one of disqualification rather than privilege. *Commonwealth v. Gillis,* 358 Mass. 215, 216-217 (1970). *Kaye v. Newhall,* 356 Mass. 300, 304 (1969). P.J. Liacos, Massachusetts Evidence 179-182 (5th ed. 1981 & Supp. 1985). The contents of private conversations are absolutely excluded, *Commonwealth v. Cronin,* 185 Mass. 96 (1904), but the statute does not bar evidence as to the fact that a conversation took place. P.J. Liacos, *supra* at 181. Testimony as to the contents of a private conversation is inadmissible even if both spouses desire the evidence to be admitted. *Kaye v. Newhall, supra.*

The plaintiff concedes that, based on the law as it now stands, the judge properly excluded the evidence.[3] Plaintiff urges us to adopt an interpretation of G. L. c. 233, § 20, First, so that evidence of a private conversation is excluded only when exclusion satisfies an underlying purpose of the statute or, in the alternative, to change the rule from one of disqualification to one of marital privilege so that the rule could be invoked only by spouses. The plaintiff argues that the exclusion of the testimony in this instance runs contrary to the purpose

---

[3] The plaintiff makes no argument that the conversations were not "private" within the meaning of the statute, or that the proposed testimony would come within one of the statutory exceptions.

of the rule. Wigmore lists five historical and policy reasons on which the rule rests: (1) the husband and wife were considered one entity at common law; (2) a marital couple has only one interest, and thus nothing could be gained by allowing a spouse to testify for or against the other; (3) a spouse has a "bias of affection" and would not testify truthfully; (4) allowing testimony might disturb marital peace; and (5) if a wife is a witness for her husband, she "must be subjected to a cross-examination which might call for truths unfavorable to his cause" and result in marital disharmony. 2 J. Wigmore, Evidence § 601 (Chadbourn rev. 1979). See 8 J. Wigmore, §§ 2227, 2228 (McNaughton rev. 1961). Another policy reason often stated is the desire to preserve the confidentiality of marital conversations. Note, Pillow Talk, Grimgribbers and Connubial Bliss: The Marital Communication Privilege, 56 Ind. L.J. 121 n.4, 127 (1980). These underpinnings of the marital disqualification rule have fallen in extreme disfavor among courts and commentators alike. See 2 J. Wigmore, *supra*. In this historical context, the statutory disqualification as to evidence of private conversations between spouses may be viewed as a statutory preservation of a remnant of an outdated common law concept. Cf. *Lewis* v. *Lewis,* 370 Mass. 619, 621-623 (1976). See P.J. Liacos, *supra* at 182 (stating distinctions between disqualification and marital privilege as to confidential communications).

It seems imprudent to prohibit testimony as to a marital conversation when both parties to the conversation want disclosure and the interests of the marital unit would be furthered by disclosure. However, the Legislature has enacted a statute stating a clear and unambiguous preference for the marital disqualification. We have consistently ruled that the statute renders spouses incompetent to testify as to the contents of their private conversations with their marital partners.[4] *Kaye* v. *Newhall, supra. Sherry* v. *Moore,* 265 Mass. 189, 194 (1928). *Commonwealth* v. *Cronin, supra.* "The language of a

---

[4] Written communications are excluded from the disqualification, *Commonwealth* v. *Caponi,* 155 Mass. 534, 537 (1892), as is abusive language that does not convey information, *French* v. *French,* 14 Gray 186, 188 (1859).

statute is not to be enlarged or limited by construction unless its object and plain meaning require it. *Johnson's Case,* 318 Mass. 741, 747 (1945)." *Rambert* v. *Commonwealth,* 389 Mass. 771, 773 (1983). While we agree with the plaintiff that many of the stated policy reasons for this statute are anachronistic and that those that are not outmoded, such as the preservation of marital confidentiality and harmony, are not furthered by the inadmissibility of this testimony, we must construe the statute as it is written. Were this strictly a common law rule, we would not hesitate to transform it from a rule of disqualification to one of privilege.[5] However, given the existence of the statute, that decision is for the Legislature. Cf. Proposed Mass. R. Evid. 504 (b).

*Judgment affirmed.*

---

[5] Plaintiffs cite *Lewis* v. *Lewis, supra,* for the proposition that we have the power to change a rule of common law origin that has taken on statutory dimensions. The case does not support plaintiff's argument. In *Lewis,* we did not agree that the common law rule of interspousal immunity had taken on statutory dimensions. *Id.* at 624-625. Thus, when we concluded that the issue of the common law rule of interspousal immunity was open to the court for reconsideration, we were not abrogating a statute.