COMMONWEALTH vs. MARIA J. FIDALGO.

No. 08-P-556.

Plymouth. February 12, 2009. - April 17, 2009.

Present: McHUGH, MILLS, & GRAHAM, JJ.

*Evidence,* Prior misconduct, Relevancy and materiality. *Motor Vehicle,* Insurance. *Fraud.*

At the trial of a criminal complaint charging the defendant with filing a false motor vehicle insurance claim in violation of G. L. c. 266, § 111B, the judge's admission of evidence of earlier accidents in which the defendant was involved constituted prejudicial error requiring a new trial, where the evidence was irrelevant to any fact at issue in the case, where its introduction could only have suggested to the jury that the case before it was another chapter in the defendant's long-running criminal scheme, and where the rest of the evidence against the defendant was not overwhelming. [132-134]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on August 29, 2006.

The case was tried before *Julie J. Bernard,* J.

*Jennifer H. O'Brien* for the defendant.

*Kristen A. Stone,* Assistant District Attorney, for the Commonwealth.

McHUGH, J. Maria J. Fidalgo, the defendant, appeals from a conviction of filing a false motor vehicle insurance claim, G. L. c. 266, § 111B, on the ground that the judge erred in admitting evidence of earlier accidents in which she was involved. We agree and reverse.

*Background.* At about 10:00 P.M. on November 23, 2005, Jolene Docanto drove Keene Barbosa to the home of the defendant, Maria Fidalgo. The car Docanto was driving was registered to her mother. At some point after 2:00 A.M., Docanto drove Barbosa and the defendant to the Roxbury section of Boston to meet some friends. When the trio arrived, the friends were not home, so Docanto sat in the car waiting for them to return.

While waiting, she dozed off. When she awoke at 4:30 A.M., she drove them back to Brockton, skidding a few times due to the snowy roads.

The evidence diverges as to what happened next. The Commonwealth's evidence was designed to show that at Barbosa's request, Docanto dropped Barbosa and the defendant off on Nilsson Street and then continued on her way. A block later, Docanto slid on a patch of ice and collided with a stop sign, severely damaging the car and suffering injuries when she hit the steering wheel and the deployed air bag. According to Docanto, she left the car and asked a passerby[1] to get Barbosa and the defendant, who returned to the car along with a man named Pedro. All four of them got back into the car before another motorist stopped to help. An ambulance took Barbosa and Docanto to the hospital.

Barbosa hired an attorney for Docanto, himself, and the defendant. Docanto did not meet that attorney or file an insurance claim,[2] despite the fact that she had been injured and her mother's car had been damaged. However, at the attorney's suggestion, Docanto saw a chiropractor. At the chiropractor's office, she ran into the defendant, who was there with Barbosa.

Docanto's mother's insurance company, Pilgrim, received a letter in December, 2005, from a law firm claiming to represent the defendant, Barbosa, and Docanto, stating that all three were filing claims for personal injury resulting from the accident. In January, 2006, however, Pilgrim and Docanto received letters from the firm saying that it no longer represented Docanto.

A Pilgrim investigator testified that the defendant signed a personal injury protection form claiming the accident injured her neck, shoulder, and back, and that, as a result, she suffered headaches and required chiropractic treatment. The defendant also filed a health insurance claim for $4,345 in chiropractic treatment she received between November, 2005, and March, 2006.[3]

---

[1] Docanto testified that "this lady came out of nowhere" and as "quick as she came, she disappeared."

[2] Docanto admitted that the car belonged to her mother and that the policy did not list her as a driver.

[3] Pilgrim's attorney indicated that the defendant's medical records confirmed that she received treatment and had been billed for their cost.

Finally, a Pilgrim attorney testified that he took statements under oath from the defendant and Docanto, and that Docanto stated for the first time that no one else was in the car during the accident.[4] Pilgrim then denied the defendant's claims. A criminal complaint issued against her in August, 2006.

The defense presented testimony of the officer who responded to the accident. He stated that he found four occupants in the car, including the defendant. The defendant, herself, testified that she never left the car between the time it left Roxbury and the time it collided with the stop sign in Brockton.

On cross-examination, the prosecutor elicited testimony from the defendant that she had been a passenger in three other automobile accidents over the preceding nine years and that she claimed injuries and sought damages claims in each.[5]

On essentially that evidence, a jury found her guilty. As noted, she appeals, claiming the judge erred in allowing the evidence regarding the earlier accidents.

*Discussion.* We review admission of the challenged evidence for prejudicial error, as defense counsel raised a timely objection at trial. *Commonwealth* v. *McLauqhlin,* 431 Mass. 241, 246 (2000).

Although "evidence of a defendant's prior misconduct may

---

[4]Docanto testified that she had been dating Barbosa for one and one-half months before the incident. She later learned that the defendant had been dating Barbosa at the same time.

[5]The judge first prohibited the prosecutor from questioning Pilgrim's investigator about the defendant's "excessive claims history." She again sustained defense counsel's objection when the prosecutor asked Pilgrim's attorney if he asked the defendant about "other accidents she's been involved with." However, she allowed the cross-examination of the defendant to proceed over defense objection, apparently on the theory that the defendant "opened the door" to the inquiry in the following colloquy on cross-examination:

> *Q.:* "Besides, how many chiropractors did you visit?"
>
> *A.:* "For this case? Just that one?"
>
> *Q.:* "For this particular case? You've been to chiropractors before?"
>
> *A.:* "Yes."

We think that, rather than "opening the door," the witness was fulfilling her obligation to tell the truth, the whole truth, and nothing but the truth. In any event, any door the colloquy somehow did open led to a room full of irrelevancies.

not be admitted to show bad character or propensity to commit the crime charged," *Commonwealth* v. *Montez*, 450 Mass. 736, 744 (2008), such evidence may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or a particular way of doing an act or a particular skill." Brodin & Avery, Massachusetts Evidence § 4.4.6, at 152 (8th ed. 2007). If "such evidence is relevant, the judge must determine that its probative value on the issue outweighs the undue prejudice that may flow from it." *Montez*, *supra*, citing *Commonwealth* v. *Helfant*, 398 Mass. 214, 225 (1986). Here the evidence was not relevant and its potential for prejudice was high. We say that knowing that the test for relevance is a broad one. As the authors of the recent Massachusetts Guide to Evidence phrased it, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mass.G.Evid. § 401, at 39 (2008-2009).

A fact of consequence in this case may have been the defendant's knowledge of how to file a false claim. But the testimony the prosecutor elicited had to do solely with the fact that she had been in car accidents and had sought damages for injuries she claimed to have suffered in those accidents. There was no evidence of how, or whether, she had participated in the claim resolution process. Indeed, the prior accidents happened when she was thirteen, fifteen, and eighteen years old, a circumstance that severely undercuts the Commonwealth's claim that the prior accidents revealed "a pattern of being in very similar accidents with similar injuries and treatment" evincing "a scheme to defraud the insurance company." It is entirely counterintuitive — and, in any event, unsupported by any evidence in the record — to think that the defendant had embarked upon the relatively sophisticated process of defrauding insurance companies at age thirteen, when the first accident occurred.

Another fact of consequence may have been the existence of "a particularly distinguishing pattern of conduct . . . tending to prove that the defendant was the person who committed the crime charged." *Commonwealth* v. *Brusgulis*, 406 Mass. 501, 506 (1990). But the defendant's identity was never in doubt. As

for the Commonwealth's suggestion that the prior accidents showed a pattern in which she was always a passenger and never a driver, it is sufficient to observe that, in two of the three, she was too young to have a driver's license and had no choice but to be a passenger.

To be sure, the injuries and treatments attending the prior accidents were similar to those claimed in this accident. But the similarity, standing alone, tends to prove nothing about the character of the claims, for a subsequent accident often aggravates a preexisting injury, which may require similar treatment. See *id.* at 506-507 (no "unique feature common to the three assaults . . . would justify admitting evidence of the prior acts to prove that the defendant . . . committed the assault" where features "common to the incidents are common to numerous assaults on women").

In sum, the evidence of prior accidents was just that, evidence of prior accidents. As such, the evidence was irrelevant to any fact at issue in the case. Its introduction could only have suggested to the jury that the case before it was another chapter in the defendant's long-running criminal scheme. The rest of the evidence against the defendant was not overwhelming, for basically the case was a credibility contest. Because the error in admitting the evidence of the earlier accidents may have contributed to the verdict, the error was prejudicial. See *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983), citing *Kotteakos* v. *United States*, 328 U.S. 750, 764-765 (1946) (an error is prejudicial unless the court, after considering all of the evidence, can say with "fair assurance" that the error "did not influence the jury, or had but very slight effect"). Therefore, the judgment is vacated and the case is remanded for a new trial.

*So ordered.*