NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1238                                    Appeals Court

COMMONWEALTH  vs.  DOUGLAS GARCIA.


No. 14-P-1238.

Essex.     September 11, 2015. - February 16, 2016.

Present:  Vuono, Agnes, & Maldonado, JJ.


Rape. Evidence, Conversation between husband and wife, First
     complaint.


     Indictment found and returned in the Superior Court
Department on August 4, 2010.

     The case was tried before Richard E. Welch, III, J.


     Michelle Menken for the defendant.
     Catherine Langevin Semel, Assistant District Attorney, for
the Commonwealth.


     VUONO, J.  This appeal raises the issue whether the spousal

disqualification set forth in G. L. c. 233, § 20, First, which

bars a spouse from testifying "as to private conversations with

the other," applies when one spouse has disclosed the substance

of a private conversation to a third party.

The defendant was convicted by a jury of rape, G. L.
c. 265, § 22 (b).  The victim, whom we shall call Sally,[1] is the
defendant's stepdaughter.  Sally was nineteen years old at the
time of the offense, which occurred at the defendant's home,
where Sally was spending the night.  Among several challenges to
his conviction, the defendant claims that the judge erred by
permitting the Commonwealth to introduce testimony about a
conversation between himself and his wife, who also is Sally's
mother, in which he allegedly apologized to the mother and
explained that he had been tired and, as a result, had confused
Sally for the mother on the night of the incident.  For the
reasons that follow, we conclude that, even though the evidence
of the conversation was admitted for the limited purpose of
impeaching the mother's credibility, the defendant is entitled
to a new trial.

Background.  a.  The Commonwealth's case-in-chief.  The
jury could have found the following facts.  On April 18, 2010,
Sally was living with her boy friend in North Andover.  The
couple were arguing.  Upon the advice of her mother, who was on
vacation in Florida, Sally drove to her mother's home in Lynn.[2]
The house is a duplex; Sally's family lived on the top floor and

---

[1] A pseudonym.

[2] Sally had previously lived in the home with her mother,
the defendant, and Sally's half-sister, before moving out at the
age of eighteen.

Sally's aunt lived on the first floor.  Sally arrived at about 11:00 P.M. and let herself into the house.  She had a brief conversation with the defendant, who was in bed in his bedroom watching television.

Sally was wearing a shirt and capri-style pants.  She did not change before getting into bed in the spare room as she had brought only her work clothes for the next day.  Sally also brought her cat, and testified that she had closed the bedroom door so that the cat would not escape from the room.  At around 2:00 A.M., Sally was awakened by "[t]he feeling of someone's hand inside [her] vagina."  At first, before she was fully awake, Sally thought she was with her boy friend.  However, when she opened her eyes, she realized that she was not in her apartment and found the defendant, naked, lying next to her.  He stood up and wrapped a towel around his torso.  Sally asked him what he was doing, to which he responded:  "I'm so sorry, . . . it's all my fault."  He left the room, and Sally then realized that her pants and underwear had been pulled down to her ankles. She quickly dressed, gathered her belongings, and drove back to her apartment.  After showering, Sally slept on the couch for a few hours until her boy friend woke her, after which she went to work at 6:00 A.M.

Around mid-morning, Sally spoke to her aunt on the telephone and told her what had happened.  Distraught, Sally

left work and returned to Lynn where she spoke further with her aunt in the first-floor apartment of the duplex. Soon thereafter, the police were contacted and the defendant was arrested.

b. The defendant's case. The defendant denied the allegation and mounted a vigorous defense, which focused on Sally's alleged bias. Through cross-examination, his own testimony, and the testimony of other witnesses, including the mother, the defendant attempted to show that Sally was lying because of her hostility toward him.[3] To that end, the defendant filed a motion in limine seeking to question Sally about a conversation she had with her mother in which Sally had stated that she was pregnant and that the defendant was responsible even though no penile penetration had occurred. The essence of defense counsel's argument was that Sally's "absurd" allegation demonstrated her willingness to fabricate.

The judge held a hearing on the defendant's motion just before opening arguments at which the prosecutor conceded that Sally had told her mother that she could be pregnant, but had explained that the comment was a sarcastic response made in

---

[3] The jury heard testimony that the defendant asked Sally to move out of the family home because he was "sick and tired" of Sally fighting with her mother. In addition, there was evidence that Sally had hosted a graduation party at the home after she had moved out, which resulted in more tension with the defendant when he came home to "a mess."

anger after Sally's mother urged her to drop the case because it would be difficult not only for Sally but for her younger sister. In addition, the prosecutor informed the judge that, during that same conversation, the mother said that the defendant had apologized to her for the incident and had explained that he had been tired and had mistaken Sally for the mother. The prosecutor then expressed her intent to introduce the mother's statement about the defendant's alleged admission if the judge were to permit the line of questioning proposed by the defendant. She argued that this testimony was probative of Sally's state of mind and explained the context in which Sally said she could be pregnant.[4] In response to this argument, trial counsel stated that the mother denied saying to Sally that her husband had apologized.

At the conclusion of the hearing, the judge allowed the motion in limine.[5] As it turned out, however, when defense

---

[4] The prosecutor also maintained that evidence whether Sally was actually pregnant was inadmissible under the rape shield statute, G. L. c. 233, § 21B. The judge agreed with the Commonwealth on this point, and evidence as to actual pregnancy was excluded.

[5] The judge warned counsel, however, that soliciting such testimony would "open the door" to the Commonwealth. Trial counsel responded that he was "willing to take that risk." At that point, however, the extent of the "risk" was not entirely clear as the issue of the mother's privilege not to testify and the question whether the rule of disqualification applied had not yet been addressed. Later, as the evidence developed, trial counsel objected to the testimony.

counsel asked Sally whether she had told her mother that she was pregnant, Sally denied it. The defendant then called the mother to the stand for the purpose of impeaching Sally's credibility. The mother testified that Sally had, indeed, claimed to be pregnant as a result of the defendant's conduct.[6]

    c. <u>The defendant's alleged admission to the mother</u>. Before commencing her cross-examination of the mother, the prosecutor sought a sidebar conference to inquire whether she could ask the mother if she told Sally that the defendant admitted culpability and claimed to have made a mistake. The judge permitted the cross-examination, stating that the rule of disqualification does not apply once a spouse has disclosed the contents of a private conversation to a third party.[7] Trial counsel's objection "for the record" was overruled. However, the prosecutor did not understand the judge's ruling and did not ask the question for which she had obtained permission, and as a result, after the defense rested, the prosecutor requested and obtained permission to recall the mother as a rebuttal witness.

---

[6] While there was no allegation of penile penetration, the mother testified on direct examination that Sally explained she could have become pregnant because of "a drip," meaning that the defendant could have been masturbating before she woke up and, as a result, there could have been semen on his fingers when he put them in her vagina.

[7] The judge stated: "Well yeah, you could elicit that because that's not spousal privilege. Once she discloses that so and so told me, that's not spousal privilege."

The sole purpose for recalling the mother was to ask her whether she had disclosed the defendant's apology for the incident to Sally. The defendant did not object to this procedure, and the judge permitted the prosecutor to recall the mother.

The mother then took the stand for a second time, and after a few preliminary questions, the prosecutor asked the mother if she had told Sally that the defendant had said that he was sorry and that he had been tired and confused. The mother denied that she had told Sally anything of that nature.[8] The prosecutor then recalled Sally to impeach the mother's credibility. Sally testified, over the defendant's objection, as follows: "[My mother] told me that [the defendant] told her he's sorry that he did it and he was so overtired he thought it was her." The testimony was preceded by a limiting instruction in which the judge said: "[T]his is only admissible on whether or not you

---

[8] The prosecutor asked: "[Y]ou told [Sally] that you had had a conversation with [the defendant] about the sexual assault that had occurred at the house and you told her that what he told you was he was sorry but he was very tired and he got confused, and he got into that bed and he thought it was you, correct?" The mother responded that she had not. The prosecutor then asked: "You never told [Sally] that?" Again, the mother responded: "No, I did not tell her that." The prosecutor persisted: "So you never told her that you had a conversation with your husband after the sexual assault and his explanation to you was that he was sorry, he was tired, he got confused and he got into bed and got confused . . . and he thought it was you?" The mother denied this a third time, and the prosecutor had no further questions for the witness.

believe [the mother], and that's the sole purpose of this upcoming testimony."[9]

Discussion. a. Waiver of marital privilege. As we have previously noted, the mother was first called to the stand by the defendant. Before she was asked any questions, the judge conducted a brief voir dire during which the mother confirmed that she and the defendant were married. The judge then informed her that she held a "spousal privilege" and was not required to testify as to conversations with her spouse, the defendant. When asked if she wanted to invoke her privilege, the mother responded affirmatively. Defense counsel then explained that the mother would testify only about her conversation with Sally, specifically whether Sally had told her that she could be pregnant. Without explicitly ruling that the mother had waived her marital privilege, the judge concluded that the mother could testify about Sally's comment.

As an initial matter, we observe that the record fails to establish whether the mother's decision to waive her privilege not to testify at her husband's trial was voluntary. The second clause of G. L. c. 233, § 20, as amended by St. 1983, c. 145, provides in relevant part that "neither husband nor wife shall be compelled to testify in the trial of an indictment,

---

[9] In addition, Sally acknowledged, contrary to her earlier testimony on cross-examination, that she had told her mother that she could be pregnant, but did so because she was angry.

complaint[,] or other criminal proceeding against the other."
See Mass. G. Evid. § 504(a) (2015).  Because the marital
privilege belongs to the witness spouse alone, the defendant
lacks standing to challenge the decision of his or her spouse to
take the stand.  See Commonwealth v. Stokes, 374 Mass. 583, 595
(1978).  See also Commonwealth v. Paszko, 391 Mass. 164, 190
(1984) ("[A] defendant has no standing to contest an alleged
infringement of a privilege he could not have exercised").
However, our cases hold that where a spouse's testimony is
obtained in the absence of a valid waiver of the privilege, use
of that testimony at trial "offends fundamental fairness."  See
Commonwealth v. Rosa, 412 Mass. 147, 162 (1992).

The judge's explanation of the marital privilege was
inaccurate.  He told the mother that she could refuse to testify
about conversations with the defendant, when, as the defendant
correctly asserts, she was not obligated to testify at all.
This error raises a serious question of fairness.  Therefore,
should there be a retrial, after properly explaining the
privilege, the judge should conduct a colloquy to determine
whether the mother voluntarily chooses to waive her marital
privilege.

b.  Marital disqualification.  The defendant claims that
the admission in evidence of Sally's testimony about statements
the mother made to her that the defendant had apologized for the

incident was improper, highly prejudicial, and in violation of the marital disqualification statute, which prohibits spouses from testifying "to private conversations with the other."[10] The Commonwealth asserts that the statute does not preclude third parties from testifying about a private conversation between spouses based on statements made to them by one of the spouses. See Commonwealth v. O'Brien, 377 Mass. 772, 775 (1979).

In the circumstances of the present case, we conclude that the statute disqualifies Sally from testifying about the mother's statements. We further conclude, regardless of the operation of the statute, that the prejudice to the defendant warrants a reversal of his conviction.[11]

Over a century ago, in Brown v. Wood, 121 Mass. 137, 138 (1876), the Supreme Judicial Court held that the privacy of a communication is not destroyed by one spouse's voluntary postconversation disclosure of the conversation's content to a

---

[10] General Laws c. 233, § 20, First, as amended through St. 1996, c. 289, § 10, provides in pertinent part that "neither husband nor wife shall testify as to private conversations with the other." See Mass. G. Evid. § 504(b) (2015). "The rule is one of disqualification, not privilege, and spouses are forbidden, on objection, to testify about the contents of their private conversations." Commonwealth v. Perez, 460 Mass. 683, 698 (2011), quoting from Commonwealth v. Walker, 438 Mass. 246, 254 (2002).

[11] We note that the judge did not make a finding as to whether the conversation had actually occurred or whether it was private. Solely for the purposes of this analysis, we assume that a private conversation about the incident did, in fact, take place.

third party.  The case was decided under the 1870 precursor to the statute at issue here.[12]  The question before the court was whether the husband could avoid replevin of a horse on the ground that he had conveyed the animal to his wife in repayment of a loan she had made to him in a private conversation.  Although, in Brown, the statute was applied to avoid the perpetration of a fraud by collaborating spouses, the court ruled that the statute disqualifies third parties from testifying about a private conversation between spouses.  The court stated that such testimony "was even more objectionable, as it was necessarily only a repetition of what the husband or wife had stated to have been the substance of their conversation."  Id. at 138.  See Gallagher v. Goldstein, 402 Mass. 457, 459 (1988) ("Testimony as to the contents of a private conversation is inadmissible even if both spouses desire the evidence to be admitted").

While we have found no later published Massachusetts decision that discusses this point, there is persuasive authority in various Massachusetts legal publications that supports our conclusion.  See Young, Pollets, & Poreda, Annotated Guide to Massachusetts Evidence § 504, at 238 (2014) ("Third persons ought not be permitted to testify where

---

[12] The statute stated that spouses "shall not be allowed to testify as to private conversations with each other."  St. 1870, c. 393, § 1.

disclosure is made by a spouse subsequent to a confidential communication"); Carney, Massachusetts Evidence:  A Courtroom Reference § 3.3(c), at 3-9 (Mass. Cont. Legal Educ. 2015) ("Privacy is also not destroyed by one spouse's voluntary postconversation disclosure of the conversation's content to a third party"); 3 Federico & Zupcofska, Massachusetts Divorce Law Practice Manual § 18.3.3, at 18-6 (Mass. Cont. Legal Educ. 2012) ("[O]ne cannot circumvent the general disqualification by introducing otherwise inadmissible evidence through the testimony of a selected third party by having the content of the private conversation told to that third party").  Additionally, our position is consistent with the purpose of the statute, which is to ensure the privacy of marital communications.  See Commonwealth v. Gillis, 358 Mass. 215, 217-218 & n.2 (1970) ("The policy underlying the statutory exclusion of private marital conversations has been much discussed[:] . . . to protect the marital relationship or to encourage confidence between spouses, or merely [to] reflec[t] legislative reticence concerning marital confidences" [citations omitted]).  See also Gallagher v. Goldstein, supra at 460 (wherein the court observed that "the statutory disqualification as to evidence of private conversations between spouses may be viewed as a statutory preservation of a remnant of an outdated common law concept. . . . However, the Legislature has enacted a statute

stating a clear and unambiguous preference for the marital disqualification").

Having determined that it was error to admit testimony regarding the defendant's apology to the mother, we now consider whether the error prejudiced the defendant such that it created a substantial risk of a miscarriage of justice. Clearly, the defendant's reported statement that "he's sorry that he did it" amounted to a confession. Its introduction plainly suggested to the jury that he was guilty. "[A] defendant's statement is usually 'the key item in the proof of guilt, and certainly one of overpowering weight with the jury.'" Commonwealth v. Berg, 37 Mass. App. Ct. 200, 203 (1994), quoting from Commonwealth v. Tavares, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982). Furthermore, the rest of the evidence against the defendant was not overwhelming. To a large extent, the case was a credibility contest between Sally and the defendant. Given this, we have no doubt that the error contributed to the verdict and, therefore, was prejudicial. See Commonwealth v. Fidalgo, 74 Mass. App. Ct. 130, 134 (2009).

Moreover, contrary to the Commonwealth's argument, the testimony was no less prejudicial because it was admitted for the limited purpose of impeachment. To begin with, we are concerned about the propriety of the prosecutor's questions to the mother about the defendant's statement. See note 8, supra.

While it appears that the prosecutor believed she had a good faith basis for posing the questions, it is far less clear that her belief rested on solid footing.[13] Indeed, defense counsel contended from the beginning that the mother denied having made the statements in question.[14]

Nor are we persuaded that the judge's limiting instruction as to the use of the impeachment evidence, while appropriate in the ordinary case, was sufficient to cure the error. "Generally, '[w]e presume, as we must, that a jury understands and follows limiting instructions.'" Commonwealth v. Rosa, 412 Mass. at 160, quoting from Commonwealth v. Jackson, 384 Mass. 572, 579 (1981). See Commonwealth v. Crayton, 470 Mass. 228, 251 (2014). Here, however, Sally's testimony about the defendant's statements was too prejudicial for the jury to hear

---

[13] We recognize that the prosecutor, commendably, sought guidance from the judge before proceeding with her questions. The prosecutor's conduct in this regard establishes the absence of bad faith but does not mitigate the harm to the defendant. The questions themselves, although not evidence, were nevertheless before the jury, taking the form of prejudicial evidence. See Commonwealth v. Stewart, 454 Mass. 527, 532 (2009) ("The leading questions put by the prosecutor were effectively transformed into evidence" [footnote omitted]).

[14] It appears from the record that the sole purpose of the mother's testimony was to lay a foundation to impeach her credibility. Massachusetts courts have rejected this practice. See Commonwealth v. Maldonado, 466 Mass. 742, 758 (2014).

and use to impeach the mother without considering it substantively.[15]

c. First complaint instruction. Although the defendant did not object at trial, he now claims that the judge's instruction on the use of first complaint testimony given at the time Sally testified was incomplete. It suffices to say that at any retrial it should be kept in mind that Commonwealth v. King, 445 Mass. 217, 247-248 (2005), and its progeny require that the jury be instructed on first complaint testimony at each instance first complaint testimony is introduced at trial, and in the judge's final instructions to the jury.

d. Remaining claims. The defendant's remaining claims of error relate to various evidentiary rulings. In view of our disposition, we need not address these issues. See Commonwealth v. Anestal, 463 Mass. 655, 663 n.12 (2012).

Conclusion. The judgment is reversed and the verdict is set aside.

So ordered.

---

[15] We also conclude that the prosecutor's comment in closing argument about the defendant's statement might have contributed to the risk that the jury would use the testimony substantively.

The prosecutor stated: "[H]er mother has already told her that the defendant said I'm sorry, I thought it was you but I was tired. . . . So [h]er state of mind is that her mom knows that this happened." Although the remark did not draw an objection, it could have been construed by the jury as an invitation to use the testimony for all purposes.