NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12125


COMMONWEALTH  vs.  DOUGLAS GARCIA.



Essex.     December 6, 2016. - April 21, 2017.


Present (Sitting at Lawrence):  Gants, C.J., Lenk, Hines,
            Gaziano, Lowy, & Budd, JJ.



Rape.  Evidence, Conversation between husband and wife,
    Impeachment of credibility.  Witness, Impeachment.




    Indictment found and returned in the Superior Court
Department on August 4, 2010.

    The case was tried before Richard E. Welch, III, J.

    After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


    Catherine Langevin Semel, Assistant District Attorney, for
the Commonwealth.
    Michelle Menken for the defendant.


    LOWY, J.  A Superior Court jury convicted the defendant of

raping his nineteen year old stepdaughter, Sally.[1]  The defendant

was married to Sally's mother.  At trial, in response to a

_____

    [1] A pseudonym.

question that should not have been asked, the mother denied that she told Sally that the defendant had confessed to the crime in a private conversation between the spouses. Then, to impeach the mother, Sally was improperly permitted to testify to the contrary. We reverse because the trial judge's admission of such highly prejudicial evidence regarding the defendant's purported confession created a substantial risk of a miscarriage of justice.

Background. The Commonwealth introduced the following evidence at trial. We reserve the circumstances of the erroneously admitted testimony for our analysis of the issue.

After an argument with her boy friend, Sally spoke with her mother on the telephone and asked to stay at her apartment, where the defendant also lived. Although out of town, her mother told Sally that she could. Sally arrived at the apartment, greeted the defendant briefly, and went to bed in the spare bedroom.

Several hours later, Sally was awakened by the feeling of someone's hand in her vagina. She turned over to see the defendant, naked, lying next to her. Sally realized her pants and underwear were pulled down around her ankles. The defendant stood up, wrapped a towel around himself, and said, "I'm so sorry, . . . it's all my fault." He then left the room. Sally dressed, gathered her belongings, and left.

At trial, in response to a question by the Commonwealth, the mother denied that she had told Sally that the defendant had confessed to her. Then, to impeach the mother, the Commonwealth elicited testimony from Sally who stated that, in a conversation she had had with her mother, the mother stated that the defendant had told her that he was "sorry that he did it and he was so overtired he thought [Sally] was [his wife]." The defendant objected to this testimony.

The jury convicted the defendant of rape by unnatural sexual intercourse in violation of G. L. c. 265, § 22. The Appeals Court reversed, concluding that G. L. c. 233, § 20, First, precluded Sally from testifying about a private marital conversation between her mother and the defendant, the substance of which her mother had purportedly disclosed to her. Commonwealth v. Garcia, 89 Mass. App. Ct. 67, 72-74 (2016). We granted the Commonwealth's application for further appellate review and reverse the defendant's conviction on different grounds.[2]

Discussion. With limited exceptions that do not apply here, § 20, First, provides that "neither husband nor wife shall testify as to private conversations with the other." The defendant argues that it was error to permit Sally to testify

_____

[2] The defendant sets forth multiple additional arguments for a reversal of his conviction, which we need not reach, given our conclusion.

that she had had a conversation with her mother in which her mother told her that the defendant essentially confessed to the rape.  On appeal, the Commonwealth argues that, although § 20, First, disqualifies a spouse from testifying to the substance of a private conversation with the other spouse during their marriage, the disqualification does not apply when the statement is admitted through a nonspouse third party to whom one of the spouses subsequently disclosed the communication.  The Commonwealth thus contends that it was proper for the trial judge to allow Sally to testify to the private marital conversation between the defendant and his wife.  We disagree and set forth the labyrinthine path by which Sally's testimony was admitted in evidence; the rules about spousal disqualification and privilege; and their application to the facts of this case where the purported conversation was disclosed to a third party.

1.  <u>Sally's testimony regarding her conversation with her mother</u>.  According to the mother, a witness for the defense, she had a conversation with Sally in which Sally claimed that the defendant had impregnated her by digital penetration.  The defense sought to introduce this claim to attack Sally's credibility and to demonstrate her bias against the defendant. The Commonwealth then indicated that if this testimony was elicited it would introduce other parts of the conversation to

show that Sally's claim was sarcastic and stemmed from frustration with her mother, who was standing by the defendant and encouraging Sally to drop the case.

The judge allowed the defense to elicit testimony regarding the pregnancy claim, but warned the defendant that doing so would "open the door to the Commonwealth . . . allowing [Sally] to explain the context of that remark."  The judge did not specifically address whether the defendant's alleged confession to his wife was part of that context.

However, the defendant's confession was ultimately admitted for a different purpose:  to impeach Sally's mother.  The defense introduced Sally's pregnancy claim through the testimony of her mother.[3]  On cross-examination, the prosecutor refrained from asking the mother about her private marital conversation with the defendant.  After the defense rested, the prosecutor expressed to the judge at sidebar that she had not asked about the conversation because § 20, First, disqualified the mother from testifying regarding her private conversations with the defendant.  The trial judge responded, "[T]he fact that [the mother] disclose[d] [the conversation] to a third party is what takes it out of the [disqualification]."  Now believing it permissible to elicit the substance of the private marital

---

[3] The defense had asked Sally about the pregnancy claim on cross-examination, but Sally denied claiming to be pregnant.

conversation between the defendant and the mother, the Commonwealth recalled Sally and her mother.

As a recall witness, the mother denied telling Sally that the defendant had admitted to the crime. Sally then testified that her mother told her that the defendant had confessed. At that point, the judge instructed the jury that Sally's testimony as to what her mother had said concerning the defendant's purported confession was admissible only to impeach the mother.[4] Thus, the defendant's statement was not before the jury for the purposes originally contemplated by the judge and the parties, because the jury were not instructed that they should consider the defendant's confession to explain the context of Sally's pregnancy claim.[5]

2. <u>Evidentiary rules applicable to spouses</u>. At trial, there appeared to be conflation of the spousal disqualification set out in G. L. c. 233, § 20, First, and the spousal privilege

---

[4] At the time of the testimony, the trial judge instructed the jury, "[T]his is only admissible on whether or not you believe [the mother], and that's the sole purpose of this upcoming testimony." The judge reiterated a similar instruction in the final charge.

[5] Whether admitted as context for the pregnancy claim or for impeachment purposes, Sally's account of her mother's out-of-court statement, containing the defendant's out-of-court statement, was not admitted to prove its truth and, therefore, did not run afoul of the rule against hearsay. <u>Commonwealth</u> v. <u>Phinney</u>, 446 Mass. 155, 165-166 (2006). See Mass. G. Evid. §§ 801, 802 (2017). As discussed <u>infra</u>, however, the undue prejudice stems from the jury's potential use of the defendant's confession for its truth.

set out in § 20, Second.  Only the disqualification is implicated by our decision in this case.[6]

Our law and rules of evidence respects the sanctity of the marital relationship in two ways:  first, by protecting private conversations between spouses that occur during the course of marriage, and second, by not allowing a spouse to be compelled to testify against his or her spouse in a criminal proceeding.[7]

---

[6] Before the mother testified, the trial judge held a voir dire, designed to ensure that the mother understood that, pursuant to the spousal privilege, she was not obligated to testify -- even as a witness for the defense -- at her husband's criminal trial.  Largely because the parties confused the privilege and the disqualification, the voir dire was inadequate to determine whether Sally's mother testified voluntarily.  Because we reverse on other grounds, we need not decide in this case whether such inadequacy itself warrants reversal.  Cf. Commonwealth v. Rosa, 412 Mass. 147, 161-162 (1992), S.C., 422 Mass. 18 (1996) (admission of testimony following involuntary waiver of spousal privilege may offend fundamental fairness).  As the Appeals Court noted, however, in the event of a new trial, the judge should conduct a proper voir dire to ensure that the mother's testimony as to nondisqualified marital conversations is voluntary.  Garcia, 89 Mass. App. Ct. at 71-72.

[7] In relevant part, G. L. c. 233, § 20, states:

"First, Except in a proceeding arising out of or involving a contract made by a married woman with her husband, a proceeding under [G. L. c. 209D] and in a prosecution begun under [G. L. c. 273, §§ 1-10], any criminal proceeding in which one spouse is a defendant alleged to have committed a crime against the other spouse or to have violated a temporary or permanent vacate, restraining, or no-contact order or judgment issued pursuant to [G. L. c. 208, § 18, 34B, or 34C; G. L. c. 209, § 32; G. L. c. 209A, § 3, 3B, 3C, 4, or 5; or G. L. c. 209C, § 15 or 20,] or a similar protection order issued by another jurisdiction, obtained by the other spouse, and except in a proceeding involving abuse of a person under

G. L. c. 233, § 20, First, Second.  See Mass. G. Evid. § 504(a), (b) (2017).

Even in criminal cases, where both protections apply, these protections differ in key respects.  For example, under § 20, First, spouses are "disqualified" from testifying to private marital conversations, absent certain statutory exceptions.  See Mass. G. Evid. § 504(b).  As a result, neither spouse can waive the disqualification, even when both spouses wish for the conversation to be considered in evidence.  See Gallagher v. Goldstein, 402 Mass. 457, 458-459, 461 (1988) (affirming exclusion of private marital conversation when only nonspouse party objected to its admission).  Contrast Commonwealth v. Stokes, 374 Mass. 583, 595 n.8 (1978) (if no objection is made to admission of private marital conversation, it may be admitted for its substance).  By contrast, a spouse called upon to testify may waive his or her "privilege" not to testify for or against his or her spouse -- although that testimony still may not include the contents of private conversations made during

---

the age of eighteen, including incest, neither husband nor wife shall testify as to private conversations with the other.

"Second, Except as otherwise provided in [G. L. c. 273, § 7,] and except in any proceeding relating to child abuse, including incest, neither husband nor wife shall be compelled to testify in the trial of an indictment, complaint or other criminal proceeding against the other."  (Emphases added.)

the marriage, which remain disqualified.  See Mass. G. Evid.
§ 504(a)(2), (b).

The disqualification unambiguously precludes spouses from testifying to private conversations made within the realm of marriage.  G. L. c. 233, § 20, First.  See Gallagher, 402 Mass. at 459; Commonwealth v. Gillis, 358 Mass. 215, 216-217 (1970). Moreover, no language in the statute suggests that disclosure by a spouse to a third party eliminates the disqualification. G. L. c. 233, § 20, First.  See Mass. G. Evid. § 504(b)(2) (marital disqualification exceptions).  Therefore, where an objection is raised, a spouse may not testify to a private marital conversation, even if that spouse has disclosed the conversation to a third party.  See Gallagher, supra.  But see Miller v. Miller, 448 Mass. 320, 326 (2007) (private marital conversation admitted without objection may be considered for full probative effect).

Accordingly, the prosecutor in this case should not have been permitted to ask the mother regarding the contents of a private marital conversation about which she could not testify. It follows that Sally's testimony regarding the private marital conversation also should not have been admitted to impeach her mother's response to a question that should not have been asked.[8]

---

[8] In concluding that Sally should not have been permitted to testify to a private marital conversation between her mother and

Because Sally's testimony contained a confession to the crime by the defendant, we are persuaded that the error "materially influenc[ed] the guilty verdict," creating a substantial risk of a miscarriage of justice (quotation and citation omitted). Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).[9]

3. Admissibility of Sally's testimony to provide context for the mother's testimony at retrial. In the event of retrial, the portion of Sally's testimony that contained the defendant's purported confession would not be admissible even to provide context to Sally's pregnancy claim, as originally contemplated by the parties. Introducing a confession, inadmissible for its truth, in these circumstances creates a danger of undue prejudice that substantially exceeds the statement's probative value for its admissible purpose: the influence of Sally's mother's statement as to what the defendant had said on Sally's state of mind. See Commonwealth v. Martinez, 431 Mass. 168, 174 (2000); Commonwealth v. Rosario, 430 Mass. 505, 508-511 (1999).

_____

the defendant, the Appeals Court determined that the disqualification under § 20, First, extended to Sally, a third party; i.e., that Sally too was precluded from testifying about the private marital communication. Garcia, 89 Mass. App. Ct. at 72-74. This is not the basis of our decision, and we do not reach the issue. This question is one better left for another day, when the third party's testimony is not, as here, unduly prejudicial evidence used to impeach incompetent testimony.

[9] The parties dispute whether the issue is properly preserved. We do not reach this issue because reversal is warranted even under this less forgiving standard.

See also Commonwealth v. Bishop, 461 Mass. 586, 596 (2012) (judge's balancing of probative value against danger of unfair prejudice subject to abuse of discretion review).

That Sally's mother told Sally that the defendant had confessed adds little to explain the circumstances of Sally's pregnancy claim.  The context could be adequately explained through Sally's testimony that she "lashed out and told [her mother] [she] was pregnant," because she was "upset that [her mother] wanted [her] to drop the case."  The defendant's confession provides little additional probative value for this narrow purpose.

Admitting the defendant's confession in this way also would be unduly prejudicial.  "Testimony of this kind carries a high probability of misuse . . . ."  Rosario, 430 Mass. at 509. There is a grave danger that the jury would consider, for its truth, the defendant's confession to the conduct underlying the criminal charge, rather than as evidence of Sally's motivation for claiming to be pregnant.

Accordingly, the defendant's confession should not be admitted for the collateral purposes of providing context to Sally's pregnancy claim.  See Mass. G. Evid. § 403 (2017). Contrast Commonwealth v. Berry, 420 Mass. 95, 109 (1995) (no abuse of discretion when inflammatory evidence was relevant to material issue).

Conclusion.  The defendant's conviction is reversed, the verdict is set aside, and the case is remanded for further proceedings consistent with this opinion.

So ordered.